73 N.J. Super. 80 (1962)
178 A.2d 678
ALICE P. KIMBERLINE, ET AL., PLAINTIFFS,
v.
THE PLANNING BOARD OF THE CITY OF CAMDEN, AN AGENCY OF THE CITY OF CAMDEN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 1, 1962.
*81 Mr. William C. Gottshalk for the plaintiffs.
Mr. George E. Stransky, Jr., for the defendant City of Camden.
Mr. William J. Shepp for the defendant Planning Board of the City of Camden.
Mr. Martin F. McKernan for the defendant Housing Authority of the City of Camden.
Mr. Russell E. Watson for the defendant Rutgers, The State University (Messrs. R.E. & A.D. Watson, attorneys).
SCHALICK, J.S.C.
This is an action in lieu of prerogative writs to test the validity of a determination of the Planning Board of the City of Camden and the approval of the city council of Camden that a certain area is blighted pursuant to N.J.S.A. 40:55-21.1 et seq.
The action against Rutgers, The State University, as a defendant was discontinued at the pretrial.
Plaintiffs own seven properties in the area. The area in question is bounded on the north by the Benjamin Franklin Bridge, which spans the Delaware River connecting Camden and Philadelphia; on the west by North Third Street; on the south by Lawrence Street, and on the east by North Fifth Street. The area contains a total of 194 dwelling units, and extends over 15.98 acres, of which 7.19 are in streets and alleys, 4.19 are in dwellings, .16 in *82 commercial buildings and 4.44 in public and semipublic use. Rutgers, The State University, owns 3.75 acres within the project area. The project area contains a total of 147 structures, of which 104 are predominantly residential structures and 20 are predominantly nonresidential structures, and 41 of which are public or semipublic structures. Two new buildings are in the area, the College Library and the Law School Building of Rutgers.
The housing authority is the agency of the City of Camden which has initiated the determinations. The planning board, pursuant to the provisions of the statute, had studies made of this area and held a public hearing at which plaintiffs and other objectors, including their counsel, were present and heard, which hearing resulted in a determination by the planning board that the area was blighted. The action of the planning board was confirmed by the City Council of the City of Camden. Pursuant to such determination an agreement was entered into between the Housing Authority of the City of Camden and Rutgers, The State University, for a redevelopment of the Camden Campus Project Urban Renewal Area. It was understood that two-thirds of the cost of same would be borne by the Federal Government under the urban renewal laws and one-third borne by Rutgers. Rutgers is the developer under the statutory provisions for the implementation of the renewal project.
Plaintiffs allege that they are property owners in one section of the project area, and it is admitted that they reside in the area bounded by Fourth, Fifth, Lawrence, and Pearl Streets, which is the area where the College Library and Law School of Rutgers are located, and that Rutgers is the owner of many other buildings in this area which are used for educational purposes, but such buildings were once used for residential purposes and have not been modified in their structure on the exterior since the residential use.
Plaintiffs seek to sever the project area into two parts, alleging that the area in which they reside is not blighted although it may be that the other section of the project *83 area is blighted, and for that reason defendants are not legally entitled to have the entire area adjudged as blighted. Plaintiffs further allege that defendants housing authority, planning board and City of Camden were acting for Rutgers in order that Rutgers may have available for its use the entire project area. Plaintiffs also except to the hearing and its conduct, contending that the findings of the experts were not adequate for such a determination, that all evidence produced was not legally admissible, and that the right of cross-examination was not allowed.
Plaintiffs produced no testimony either by way of experts or otherwise, other than the statements of the objectors who appeared at the hearing and expressed their reasons for objecting. Plaintiffs further placed in issue their contention that Rutgers had purchased several of these properties and had permitted them to deteriorate, and by that means contrived to aid in the deterioration of the properties which contribute to the present blighted state, if it were so determined. Plaintiffs go further and allege that Rutgers has used the housing authority and the City of Camden to accomplish its purpose in seeking title to and control of the property in this area.
Defendants allege that they proceeded in a legal manner, complied with the provisions of the statute which empowers them to act in situations of this kind, and assured themselves of the existence of a developer, Rutgers, before and after their determination which the defendants contend is a sound governmental policy.
The court tried this issue on the basis of the public hearing held before the planning board on June 2, 1961. Additional evidence was received as to location of plaintiffs' properties and general photographs of the area. The record reveals testimony of Mr. Anthony H. Murray, Jr., a member of the firm of Anthony Murray Associates, who were retained by the housing authority to make surveys and prepare plans to be incorporated in an application to the Federal Government for federal assistance for the renewal *84 of the Camden Campus Project Area, and such survey was conducted in April 1961 of all structures in the project area. That survey included the previous statement of the court herein as to the number of structures, the acreage and other facts heretofore stated. Their findings, based on the survey, were that 94 structures, or 64% of the total, have been classified as containing building deficiencies, and that the area contained a total of 194 dwelling units, of which 154, or 79%, are deficient, which compared with 46% of deterioration of dwelling units in the area in 1950, according to the United States Census survey of housing. To quote the findings of this witness, it was the considered opinion that the area was blighted in terms of the New Jersey Blighted Areas Act for the following reasons:
"1. The generality of buildings used as dwellings and dwelling accommodations therein are substandard, unsafe, insanitary, dilapidated, obsolescent; and are lacking in light, air and space and possess these characteristics to a degree as to be conducive to unwholesome living.
2. The area with buildings and improvements, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement and design, excessive land coverage, deleterious land use, and obsolete layout are detrimental to the safety, health, morals and welfare of the community.
The following general findings were found during our survey:
1. The entire area is characterized by a lack of set backs or front yards.
2. A majority of the structures contain inadequate and in many instances, insanitary rear yards.
3. Over 2/3 of the structures used as dwelling units contain structural deficiencies to a degree as to hazardous to health and safety.
4. Interior streets such as Cole and Wilson are inadequate for vehicular traffic and present a safety hazard.
5. Over 75% of the side walks in the area are broken and otherwise in poor condition.
6. The presence of other than residential uses interspersed throughout the area generate traffic to a degree as to have a deteriorating effect upon the dwelling units in the area.
7. Excessive land coverage is predominant; as is overcrowding in a majority of the residential structures  originally constructed as single family dwellings units now converted to multi-family use.
8. The area is deficient in terms of parks and other recreational space as well as off-street parking."
*85 The record before the planning board also included a relocation plan submitted by Curnell Thompson, who is employed by the Housing Authority of the City of Camden, as an urban renewal supervisor responsible for administration, relocation and property management programs. In reference to this area his findings, according to his survey, disclosed:
"* * * that houses have been sub-divided for smaller families or roomers requiring a single room or a two-room apartment. Larger families are in two and three room apartments (excluding baths and kitchens where they are in separate rooms.) Cooking facilities are in the corner of a room used for sleeping. There are 23 families of three, four, and five persons housed in one, two and three rooms. Three families of six persons are living in two room apartments. One family of ten persons is living in five rooms.
Sleeping room is inadequate for 22 of the larger families (from three to ten persons). There are 32 families without living rooms (this is, a room not used for sleeping), the individual occupants and families having only one, two, or three rooms for all purposes.
There are rooms with toilets, or baths that are shared by 22 families. One family (4 persons) lives in one large room used for sleeping, cooking, eating, etc., without any partitions. There are 12 families, each using a one burner gas plate for cooking. Six families have blind bathrooms (that is, not having proper ventilation.) There are 42 families not having dual egress. One family has a wash bowl located in what was formerly a closet and serves a dual purpose as a kitchen sink and bathing facility. Although families have central heating, some complained of its inadequacy and supplemented this by using their gas range."
It is true that Rutgers owns several properties in the sector which the plaintiffs refer to, but except for the two buildings named, the structures still are former residential properties now being used for classrooms, laboratories, fraternities, and storage facilities, as well as for administration purposes.
Effort on the part of the plaintiffs to sever one sector of this project area from the other is giving effect to their desire rather than a realistic approach considering the actual conditions in the entire area. Our courts have previously determined that it is necessary to view these *86 areas in their entirety and not to isolate one small section from the whole, and further that the legislative action shall not be affected by any study which deals with the properties in the area on a single structure basis.
The court finds that there is substantial evidence to support the determination of the planning board and the city council that this is a blighted area. The deterioration and obsolescence of the buildings, the use of those properties which were once single residences for housing many families, the absence of side yards, the inadequate and insanitary rear yards, the hazardous and inadequate streets, the lack of parking facilities, the almost total deterioration of the sidewalks, and the several other reasons assigned by the experts, can only lead to this conclusion.
It is only reasonable to conclude that this is an inexorable result since the construction of the Benjamin Franklin Bridge, which forms the northern boundry of this area, and the resulting exodus over the last few decades, from areas such as this one in center city to the suburbs, of those who were individual property owners occupying these properties as single residences. The record further reveals that as these properties are conveyed by the long-time residents of this area there is a resulting deterioration of property.
The allegation of plaintiffs that Rutgers contrived to bring this area to the blighted state was unsupported by evidence. The use of many of these residential properties which were purchased by Rutgers for purposes other than residential is not proof of plaintiffs' contention. And furthermore, the fact that the present owners, Rutgers, or other persons, have not seen fit to continually restore these properties does not affect the determination, nor is it proof of any design on the part of either Rutgers, or such persons, to contribute to the blight. Rutgers has used these properties for the best use to meet their needs. It would not be economically feasible for it to act otherwise.
After the close of the trial I walked through part of the area accompanied by the attorneys, observing conditions, *87 which observations in view of the evidence before the planning board sustain the conclusion that the determination of blight is a correct one. An occasional property retains its dignity as a residence, the few included some of plaintiffs' properties. Those owners sought to cling to a time long since past when the area properties formed a desirable residential neighborhood. The same few stood out as vestigial survivors in the wake of the wave of deterioration which is engulfing the entire sector.
An examination of the record of the proceedings before the planning board shows a compliance with the statutory requirements as set forth in Wilson v. Long Branch, 27 N.J. 360, 384 (1958):
"It will be observed that the function of a planning board is to make a preliminary investigation, to determine if the area studied is blighted, and to report to the governing body. Final decision, both as to the condition of blight and as to whether the property in the area should be taken, rests with the latter body. No authority is given to the board to subpoena or to swear witnesses. They are directed to consider any and all written objections that may be filed. There is no legislative requirement that such persons must appear at the hearing or submit to cross-examination. Hearsay statements which need not be under oath and which are not required to contain information of their own knowledge, must be `consider[ed].' Any conceivable document, map, article or photograph might be incorporated therein.
In this context a distinction must be recognized between a legislative investigation and hearing and a judicial hearing. No adjudication of property rights is called for here nor is there any taking of property involved. There is simply preliminary investigation and report by a subordinate agency of government. These are typical of the legislative process."
Also, in Wilson v. Long Branch, supra, the court said, at page 391:
"The suit then proceeded on the thesis that the substantial evidence test was to be applied to the municipal determination.
Ordinarily, judicial review in a case of this kind would not proceed beyond the ascertainment of whether the local governmental action was arbitrary or capricious, Schenck v. City of Pittsburgh, supra [364 Pa. 31, 70 A.2d 612 (Sup. Ct. 1950)]. State on Information *88 of Dalton v. Land Clearance For Redevelopment Auth., supra [364 Mo. 974, 270 S.W.2d 44 (Sup. Ct. 1954)]; David Jeffrey Co. v. City of Milwaukee, supra, at [267 Wis. 559] 66 N.W.2d [362] 374 [Sup. Ct. 1954]; or corrupt, irrational or baseless, Kaskel v. Impellitteri, supra." [306 N.Y. 73, 115 N.E.2d 659 (Ct. App. 1953)]
Also, see Carroll v. Camden, 34 N.J. 575 (1961).
It is to be reasonably expected that some of the properties, such as some of the plaintiffs' properties, would be in good condition, but such have no legal effect on the determination of the planning board and is no reason for this court to consider a modification of the finding of blight. In fact, there is no support for the plaintiffs' contention that this area is severable. The two new structures owned by Rutgers and the few houses owned by plaintiffs in good condition, do not modify the blight which exists in that sector and in the entire project area.
The Legislature has defined blighted areas, N.J.S.A. 40:55C-3, as
"* * * that portion of a municipality which by reason of, or because of, any of the conditions hereinafter enumerated is found and determined as provided by law to be a social or economic liability to such municipality:
(a) The generality of buildings used as dwellings or the dwelling accommodations therein are substandard, unsafe, insanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living;

* * * * * * * *
(d) Areas (including slum areas), with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community."
The proofs in this case substantiate the finding that the entire area is a blighted area under these provisions of the statute. In Wilson v. Long Branch, supra, the court said, at page 379 of 27 N.J.:
*89 "The area to be classed as blighted is the portion of a municipality which in the judgment of the planning board or governing body, as the case may be, reasonably falls within the definition laid down by the Legislature. The fact that such an area includes some sound homes or buildings, or even that incorporated therein as an integral part and necessary to the accomplishment of the redevelopment plan, is a portion of the municipality containing structures which are not substandard, is not sufficient to provoke a judicial pronouncement that the Legislature unreasonably surrendered its prerogatives and duties. And moreover, where as in this instance the guides for the subordinate agency action are adequate, the courts will not interfere with the boundary lines adopted in the absence of palpable abuse of discretion."
Admittedly, the purpose of the redevelopment project in this case is to replace a blighted area of the city with a campus and buildings for Rutgers, The State University. Rutgers is the redeveloper and has entered into a contract with the housing agency. That agreement in its preamble specifies the intention that the developer construct buildings and improvements in the project area for the purpose of providing educational facilities and related institutional accommodations, and for other similar purposes, and further gives effect to the intention and purpose of the agreement to eliminate the blighted area and to develop these institutional accommodations, buildings and related facilities and other improvements. The housing authority agrees to demolish and remove all structures located within the project area, and to convey the title to the developer for a consideration of $143,000. The agreement provides for commencement of the work within 90 days of receipt of title to the land by the developer, and limits the use of the land in the project area for the purposes designated in the urban renewal plan. There is a further limitation that the project area and the improvements thereon shall, for a period of 25 years, be used only for educational facilities, buildings and related institutional accommodations and purposes, streets, alleys and ways, public or private, parking necessary or incidental to the aforesaid educational uses, and for other public purposes as set forth in said plan.
*90 The legal status of Rutgers is defined in Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956). The right of Rutgers to be the developer in this case is not questioned. The right of the City of Camden agencies to act in concert with Rutgers for the purpose of expansion of the latter's educational facilities was brought into question. The determination that the area is a blighted area is sufficient in itself to warrant the City of Camden, and its agencies, to enter into a contract with any eligible developer, and Rutgers qualifies as such. The agreement between the Housing Authority of the City of Camden and Rutgers, which is before the court, is within the purview of the legislative enactments. N.J.S.A. 40:55C-32. In fact, the choice of Rutgers as the redeveloper is an achievement on the part of the City of Camden which conforms with the declaration of policy set forth by the Legislature "for the * * * purposes of acquiring and replanning such areas and of holding, redeveloping or disposing of them in such manner that they shall become available for economically and socially sound development by private or public enterprise or by a combination of both." N.J.S.A. 40:55C-2. Moreover, the fact that a redeveloper was available prior to the municipal determination and has now entered into an agreement with the housing authority can lead only to the conclusion that such is the exercise of sound judgment. There is no evidence of any wrongful conduct on the part of Rutgers, or its representatives.
Plaintiffs have failed to sustain the burden imposed upon them to show that the determinations of the planning board and the city council of Camden were arbitrary, capricious or illegal. The action is dismissed without costs.