717 A.2d 1008 (1998)
SPRUCE MANOR ENTERPRISES, Plaintiff,
v.
BOROUGH OF BELLMAWR and Bellmawr Planning Board, Defendants.
Superior Court of New Jersey, Law Division, Camden County.
Decided June 11, 1998.
*1009 James D. Hamilton, Jr., (DuBois, Sheehan, Hamilton & Levin), Camden, for plaintiff, Spruce Manor Enterprises.
Robert Messick, Haddonfield, for Borough of Bellmawr.
Ralph J. Kmiec, Voorhees, for Borough of Bellmawr Planning Board.
ORLANDO, A.J.S.C.
This is an action in lieu of prerogative writs challenging the validity of a determination by the Planning Board (Board) and the Mayor and Council of the Borough of Bellmawr that a 120 unit apartment complex is an area in need of redevelopment pursuant to N.J.S.A. 40A:12A-1-49. The central question for determination by the court is whether an apartment complex can be designated as an area in need of redevelopment pursuant to that statute on the grounds that the complex does not conform with present day design standards.
A resolution adopted by the mayor and council of the borough of Bellmawr charged the borough's planning board with holding a public hearing to determine whether a 120 unit apartment complex known as Spruce Manor Apartments is an area in need of redevelopment. Public hearings were held by the Planning Board on December 2, 1996 and January 6, 1997. On February 3, 1997 the Bellmawr Planning Board adopted a resolution recommending that the borough council designate the Spruce Manor Apartments as an area in need of redevelopment and that it adopt a redevelopment plan. Due to typographical errors in the resolution the planning board adopted a de novo resolution on May 5, 1997 to the same effect. On May 15, 1997 the mayor and council, based upon the findings of the planning board, adopted a Resolution declaring the Spruce Manor Apartments to be a redevelopment area. The present action followed.
At the hearing before the Planning Board it was established that Spruce Manor Apartments is a 120 unit complex situated on 3.2 acres of land. There are 102 parking spaces at the site. The apartment complex is approximately 30 years of age and was constructed in accordance with the design standards then applicable for such complexes. Over 20 residents of the complex testified that conditions of the apartments were satisfactory or good. One resident testified that the hallways were dirty. It was established that the apartment complex was inspected pursuant to the Hotel and Multiple Dwellings Law, N.J.S.A. 55:13A-1-27. This statute empowers the Commissioner of the Department of Community Affairs to promulgate regulations necessary to assure that the multiple dwelling is maintained in a manner that "is consistent with and will protect the health, welfare and safety of the occupants or the public generally". N.J.S.A. 55:13A-7. The initial inspection revealed certain deficiencies. At the time of the hearing all of the deficiencies noted had been corrected. The complex had been issued a certificate attesting that it was in compliance with the regulations for the maintenance of *1010 hotels and multiple dwellings. There was vague criticism of the conditions at the complex based upon superficial observations by certain borough officials. For example, the Bellmawr Construction official, Joseph Walburton, testified that the complex seems to be dim and that ventilation seems to be inadequate. However, no testing was done to support these assertions. Moreover, the complex had never been issued any summonses for violating any Borough ordinances regarding lighting or ventilation. Similarly, the borough fire chief, Robert Morka, noted that some units appear to be occupied by numerous persons. However, this assertion was based upon a casual observation. There was no systematic inspection of the apartment units and there was no investigation as to whether the persons observed were residents or guests. Moreover, this observation was made of less than 10 units. Furthermore, there were no complaints ever filed regarding overcrowding at the apartment complex. At the time of the hearing before the planning board there were no unissued certificates of occupancy, which are required before any new tenant moves into a unit. There were no pending complaints. The only outstanding violation was the lack of installed fire doors. The requirement for fire doors arose in 1990. The plaintiff had secured planning board permission for the installation of the fire doors and was in the process of installing them at the time of the hearing. By the time the planning board passed its May 15, 1997 Resolution the fire doors were properly in place. That the complex was in generally satisfactory condition is borne out by the statement of the planning board solicitor who stated "it's stipulated that the property is not in bad shape". (Transcript p. 44)
The central focus of the hearings before the Board was whether the apartment site should be designated as an area in need of redevelopment because it did not meet current design standards. Mr. Fusco, the Borough Engineer, testified that the design and density of the Spruce Manor Apartments are consistent with the design and density standards prevailing when the complex was initially constructed 30 years ago. He testified, however, that the standards have changed. The subject site has approximately 40 units per acre, whereas today's standard is 10 units per acre. Similarly, the site has 102 parking spaces, and current standards require 180 to 240 parking spots. There was additional testimony that the units were not handicap accessible, contrary to current standards. Furthermore, the complex does not have on-site recreational facilities as is required by the ordinance now in effect. Mr. Fusco determined that because the complex did not meet present day design standards it was obsolete in its design and overcrowded. Mr. Wolburton, the construction code official, concluded that the complex was an area in need of redevelopment because it lacked recreation facilities and was not handicap accessible.
Carmen LaRosa, an architect and planner retained by the plaintiff, testified that the buildings were not unsafe, unsanitary or dilapidated. He noted that the building was not substandard under the standards used by the Department of Community Affairs. This is evidenced by the fact that the complex passed the state inspection. Although Mr. LaRosa acknowledged that the complex would not meet today's design standards with respect to the number of parking spots, handicap accessibility or units per acre, he concluded that the site is neither obsolete nor substandard. He opined that a property is not obsolete if it is usable under the standards for which it was designed and has been inspected and upgraded to meet the regulations adopted pursuant to the Hotel and Multiple Dwellings Law, N.J.S.A. 55:13A-1-27. He, therefore, concluded that the Spruce Manor Apartments is not an area in need of redevelopment.
The Planning Board's resolution recommending to the Mayor and Council that Spruce Manor be declared an area in need of redevelopment was predicated on two conclusions. The Board determined that the complex is obsolete, substandard and/or suffers from a faulty arrangement of design because it does not comply with current standards regarding handicap access, recreation areas, parking spots and units per acre. The Board also found that the complex is overcrowded.
*1011 In N.J.S.A. 40A:12A-2A, the Legislature set forth its findings which led to the enactment of the local redevelopment housing law. The statute in pertinent part states:
There exist and persist in various communities of this state conditions of deterioration in housing, commercial and industrial installments, public services and facilities and other physical components and supports of community life, and improper or lack of proper, development which result from forces which are amenable to correction and amelioration by concerted effort of responsible public bodies, and without this public effort are not likely to be corrected or ameliorated by private effort.

[N.J.S.A. 40:12A-2(a).]
The statutory scheme empowers the planning board to conduct a preliminary investigation to determine whether or not to recommend that the governing body of a municipality designate a particular area to be one in need of redevelopment. N.J.S.A. 40A:12A-6. After reviewing the recommendation of the planning board, the municipal governing body may adopt a resolution determining that the delineated area or any part thereof is a redevelopment area. The determination must be supported by substantial evidence N.J.S.A. 40A:12 A-6(b)(5). The standards for determining whether an area may be designated to be in need of redevelopment are embodied in N.J.S.A. 40A:12A-5. With respect to the subject case, subsections (a) and (d) are germane:
A delineated area may be determined to be in need of redevelopment if after investigation notice and hearing as provided in section 6 of P.L.1992 c 79 (C.40 A:12A-6) the governing body of the municipality by resolution concludes that within the delineated area any one of the following conditions is found:
(a) The generality of buildings are substandard, unsafe, unsanitary, dilapidated or obsolescent or possess any of such characteristics, or so lacking in light, air or space as to be conducive to unwholesome living or working conditions;
(d) Areas with buildings or improvements which, by reason of dilapidation obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout or any combination of these or other factors are detrimental to the safety, health, morals or welfare of the community.
The case law applying the statute is instructive.
In Lyons v. City of Camden, 52 N.J. 89, 243 A.2d 817 (1968), the New Jersey Supreme Court upheld a decision declaring an area consisting of 272.45 acres blighted. The tract included residential units. In Lyons the local board hired an experienced firm of planning and urban renewal experts who made a thorough study of the residences. A structure by structure survey was done by four assistants, three of whom were engineers and the fourth a registered architect. The interiors and exteriors of the dwellings were inspected, and extensive testing with respect to criteria established by the consultants was done. 89 of the dwelling units were found to be substandard. Of those, 14 were in such a state of disrepair as to be untenantable. The total number of units found to be substandard represented 53% of all dwelling units within the designated area.
Judge Schalick in Kimberline v. Planning Board of Camden, 73 N.J.Super. 80, 178 A.2d 678 (Law Div.1962), upheld a decision by the planning board designating a tract of 15.9 acres as blighted. Within this area were 194 dwelling units. The planning board made extensive studies. It was found that 32 families were without living rooms. 22 families shared rooms with toilets or baths. One family of four persons was living in one large room used for sleeping, cooking and eating. 12 families were each using a one burner gas plate for cooking and one family had a wash bowl located in what was formerly a closet which served a dual purpose as a kitchen sink and a bathing facility. The planning boards determination that 79% of the dwelling units were deficient was supported by these detailed inspections.
The court in Stahl v. The Paterson Bd. Of Finance, 62 N.J.Super. 562, 163 A.2d 396 (Law Div.1960) upheld a resolution declaring an area in the city of Paterson blighted. The *1012 planning board made a field survey in which the exteriors of all 163 dwellings and the interiors of 132 dwellings were inspected. Extensive detailed notations of the conditions were made. For example, in 67% of the units, more than half of the rooms lacked heating units. Seventy percent of the units had cold water only. Seventeen percent of the units lacked baths, and sixty-one percent lacked central heating. In light of these findings, the court concluded that there was substantial evidence to support the board's designation of the area as blighted.
In Maglies v. East Brunswick Tp. Plan. Bd., 173 N.J.Super. 419, 414 A.2d 570 (App. Div.1980), the owner of two buildings with six apartments located on three quarters of an acre of lot challenged a determination declaring the site blighted. The court upheld the decision, noting that the blight was sufficiently advanced, even though confined to a relatively small area, to justify a determination that it be remedied at this time. The determination of blight was grounded on the fact that the buildings were substandard, dilapidated and unlivable.
The actions of the planning board and the governing body are presumed valid. In order for the plaintiff Spruce Manor to set aside the governing body's decision that the complex is an area in need of redevelopment there must be a demonstration that the determination is arbitrary, capricious or contrary to law. Downtown Residents v. Hoboken, 242 N.J.Super. 329, 576 A.2d 926 (App. Div.1990). To the extent that the decision by the Mayor and Council is grounded upon the Planning Board's finding that the complex is overcrowded, it must fail. The only testimony with respect to overcrowding regarded casual observations by the fire chief and the construction code official. No detailed inspection of the apartments was conducted. There was no effort made to determine whether the persons observed were visitors or residents. There was no tabulation as to the number of persons observed or the number of rooms in each apartment. The apartment complex has never been cited for overcrowding, and has been found to be in compliance with the regulations promulgated pursuant to the Hotel and Multiple Dwelling's Law, N.J.S.A. 55:13A-7. The thorough investigations of residential units present in Lyons, Kimberline, and Stahl, are absent here. The substantial evidence requirement mandated by N.J.S.A. 4A:12-6(b)(5) is not met. The conclusion of the Planning Board that there is substantial evidence of overcrowding is arbitrary and capricious. Moreover, even if the complex is overcrowded, under N.J.S.A. 40A:12-5(d) there must be a demonstration that the overcrowding is detrimental to the safety, health, morals or welfare of the community. Specifically subsection (d) provides:
Areas with buildings or improvements which by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout or any combination of these or other factors are detrimental to safety, health, morals or welfare of the community.
Thus, there must be substantial evidence before the Board that not only is there overcrowding but that the overcrowding is detrimental to the safety, health, morals or welfare of the community. There was no evidence whatsoever before the board that any overcrowding imperiled the safety, health, morals or welfare of the community. Accordingly, any conclusion that Spruce Manor is in need of redevelopment based upon the finding of overcrowding by the Planning Board must be set aside.
This court now turns to the central issue in this litigation, the contention that because the apartment complex does not comply with current design standards regarding units per acre, number of parking spaces, recreational facilities and handicap accessability it should be designated as an area of redevelopment. At the outset, it should be noted that the standard of review by the court on this issue does not involve a determination of whether the decision of the municipal bodies was arbitrary or capricious. The interpretation of an ordinance or a statute is a legal matter in which an administrative agency has no particular skills superior to a court. Jantausch v. Borough of Verona, 41 N.J.Super. 89, 124 A.2d 14 (Law *1013 Div.1956), aff'd. 24 N.J. 326, 131 A.2d 881 (1957). Consequently, where the issue is one of law, the scope of judicial review is subject to a de novo review by the courts. Grancagnola v. Planning Bd., 221 N.J.Super. 71, 533 A.2d 982 (App.Div.1987). It is agreed by both parties that the complex does not meet current design standards with respect to recreational facilities, units per acre, handicap accessability and parking spaces per unit. Thus it is a legal question as to whether or not that failure to comply with current day standards can, by itself, serve as a basis for a determination that a particular complex is an area in need of redevelopment.
The standards applicable to the Spruce Manor Apartments are set forth in N.J.S.A. 40A:12a-5(a) and (d). The governing body and Planning Board argue that the failure to meet current design standards renders the complex obsolescent or substandard under N.J.S.A. 40:12A-5(a). The terms obsolescent and substandard are not defined within the statute. In Fidelity Union Trust v. McGraw, 138 N.J.Eq. 415, 48 A.2d 279 (Ch. 1946), the Chancery Court was called upon to determine the meaning of obsolescence as it relates to a capital asset suffering a diminution in value. The court noted that obsolescence is not depreciation nor is it wear and tear. The court concluded that obsolescence is the process of falling into disuse and relates to the usefulness and public acceptance of a facility. This accords with the generally understood meaning of the term obsolescence. Obsolescence is the process of becoming obsolete. Obsolete is defined as "no longer active or in use, disused, neglected," Webster's Third' New International Dictionary, 1558 (1967). Under this analysis it certainly cannot be concluded that the building is obsolete. The building is inhabited and meets current standards regarding habitability.
A determination of whether an apartment complex is substandard must be made with reference to the Hotel and Multiple Dwelling's Law, N.J.S.A. 55:13A-1-27. The Legislature, in regulating complexes such as Spruce Manor, declared:
This act being deemed and hereby being declared remedial legislation necessary for the protection of the health and welfare of the residents of this state in order to assure that the provision therefor of decent, standard and safe units of dwelling space shall be liberally construed to effectuate the purpose and intent thereof.

[N.J.S.A. 55:13A-2.]
Indeed, the commissioner is given power to promulgate regulations to assure that multiple dwellings are being maintained in a manner that will protect the health, safety, and welfare of the occupants. N.J.S.A. 55:13A-7. Thus, it is the commissioner who is empowered to establish standards with which an apartment complex must comply. Therefore, a determination as to whether or not the building is substandard must be made with reference to the regulations promulgated by the commissioner under the aforesaid legislation and not with respect to design standards. Inasmuch as the complex complies with the regulations issued by the commissioner, it cannot be said to be substandard.
Moreover, even if there is a determination that the building is substandard or obsolete as set forth in N.J.S.A. 40A:12A-5a, there would need to be a further determination that these characteristics are conducive to unwholesome living or working conditions since that is a further requirement of the statute. In this case there is no such evidence in the record that those conditions that allegedly rendered the complex substandard or obsolete led to unwholesome living conditions.
The same analysis applies with respect to the criteria set forth in N.J.S.A. 40A12A-5(d). Under this section it is clear that any determination of obsolescence, faulty design, excessive land coverage or obsolete layout must be shown to be detrimental to the safety, health, morals or welfare of the community. There is no evidence that what is deemed to be the dated design standards of the Spruce Manor Apartments is detrimental to the safety, health, morals or welfare of the community. Quite simply, the fact that design standards have changed cannot in and of itself render an apartment complex an area of redevelopment under the *1014 Local Redevelopment and Housing Law. N.J.S.A. 40A:12a-1-49. This conclusion is consistent with the legislative intent. The power to declare an area in need of redevelopment is granted to local governing bodies in order to correct housing, commercial and industrial deterioration which is not likely to be corrected by private action. N.J.S.A. 40A:12A-2(a). Spruce Manor is certainly not deteriorated housing. The apartment complex is occupied and not in violation of any state or local laws, regulations or ordinances. Certainly the Legislature did not intend local governing bodies to be able to declare an area in need of redevelopment simply because building design standards or zoning ordinances change. Significant consequences befall an owner of a complex which is declared a redevelopment area. The Supreme Court in Lyons, supra, observed that a declaration of blight ordinarily adversely affects the market value of the property involved. Before such a consequence can occur, there must be evidence that the characteristics of the complex lead to unwholesome living conditions or are detrimental to the safety, health, morals or welfare of the community. There was no such evidence presented to the Planning Board regarding the Spruce Manor apartments. Accordingly, the determination of the Mayor and Council that the Spruce Manor Apartments is an area in need of redevelopment is set aside.