851 A.2d 685 (2004)
370 N.J. Super. 429
CONCERNED CITIZENS OF PRINCETON, INC., James Firestone, Herbert Hobler, Henry Landau, Mark J. Leuchten, Richard Strazza, and Herbert Tuchman, Plaintiffs-Appellants/Cross-Respondents,
v.
MAYOR AND COUNCIL OF the BOROUGH OF PRINCETON, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 2004.
Decided June 30, 2004.
*688 R. William Potter, Princeton, argued the cause for appellants/cross-respondents (Potter and Dickson and Robert B. Zagoria, attorneys; Mr. Potter and Mr. Zagoria, on the brief).
Michael J. Herbert, Princeton, argued the cause for respondent/cross-appellant (Herbert, Van Ness, Cayci & Goodell, attorneys; Mr. Herbert, of counsel, and Lisa J. Clapp, on the brief).
John M. Van Dalen, Senior Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Peter C. Harvey, Attorney General, attorney; Nancy Kaplan, Assistant Attorney General, of counsel; Mr. Van Dalen, on the brief).
Anne S. Babineau, Woodbridge, argued the cause for amicus curiae New Jersey Future, Inc. (Wilentz, Goldman & Spitzer, attorneys; Ms. Babineau, of counsel, and Anna I. Monforth, on the brief). *686
*687 The opinion of the Court was delivered by FALL, J.A.D.
Plaintiffs Concerned Citizens of Princeton, Inc., James Firestone, Herbert Hubler, Henry Landau, Mark J. Leuchten, Richard Strazza, and Herbert Tuchman appeal from an order entered in the Law Division on April 14, 2003, granting summary judgment in favor of defendant, *689 Mayor and Council of the Borough of Princeton. The order dismissed their complaint in lieu of prerogative writs challenging defendant's designation of certain municipally-owned properties located in the central business district of the downtown area of Princeton as constituting an area in need of redevelopment pursuant to the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73. Defendant cross-appeals from the trial court's interlocutory order entered on February 25, 2003, denying its motion to dismiss plaintiffs' complaint as untimely.
We affirm substantially for the reasons articulated by Assignment Judge Linda R. Feinberg in her comprehensive written opinions issued on February 21, 2003, and March 31, 2003. We conclude that the trial court properly applied its discretion in concluding that the interests of justice warranted enlarging the period of time within which plaintiffs could challenge the action of the Borough Council in determining that the municipally-owned property constituted an area in need of redevelopment under the LRHL.
On the merits, we reject plaintiffs' contention that the Borough Council was limited to consideration of the criteria set forth in N.J.S.A. 40A:12A-5(c) when determining whether municipally-owned property constitutes an area in need of redevelopment under the LRHL. We hold that the governing body of a municipality considering whether an area consisting in whole, or in part, of municipally-owned lands should be designated as an area in need of redevelopment, may consider whether any of the criteria set forth in N.J.S.A. 40A:12A-5 have been established by substantial credible evidence. Here, there was substantial credible evidence in the record supporting the Borough Council's determination that the municipally-owned properties constituted an area in need of redevelopment pursuant to the criteria set forth in N.J.S.A. 40A:12A-5(d) and -5(e).
We further conclude that the terms "blighted area," as used in N.J. Const., Art. VIII, § 3, ¶ 1, and "an area in need of redevelopment," as used in the LRHL, are synonymous. Therefore, the designation of an area in need of redevelopment under the LRHL is the equivalent of a blight designation. The legislative history of the LRHL reflects the intent of the Legislature that the LRHL encompass a broad range of circumstances in determining whether an area is in need of redevelopment. The relative affluence of a municipality or its residents is irrelevant in that calculus as long as the determination that an area is in need of redevelopment meets the criteria set forth in N.J.S.A. 40A:12A-5 and is supported by substantial credible evidence.
The following discussion instructs our conclusions. Following nearly two decades of exploring various alternatives to the Borough's parking problems in the downtown area of Princeton, the Borough Council adopted a redevelopment plan that entailed construction of a five-story parking garage, a public plaza, and seventy-five housing units, twelve of which would be committed to affordable housing. The area determined to be in need of redevelopment consists of municipally-owned properties collectively constituting 2.13 acres, located between Wiggins, Witherspoon and Spring Streets. A public library and surface parking lot occupied those lands.
In 1980, the governing body commissioned the design of a master plan for the downtown area of Princeton that contemplated construction of a multi-level parking facility to replace the surface parking lot, which was adjacent to Spring Street. The central components of the 1980 master plan concerning the subject site were a *690 library plaza, community housing, and the parking garage. That plan envisioned development of additional retail and residential space at that site, anchored by the proposed multi-level parking facility to accommodate 450 vehicles, and to be located at the southwest corner of the intersection of Spring and South Tulane Streets. To help defray the cost of the garage, it was proposed that 6,200 square feet of retail space be included in the development plan. These provisions of the 1980 master plan were not implemented; however, discussions regarding the need for additional parking in the downtown area continued.
On December 12, 1996, the Princeton Regional Planning Board adopted the "Princeton Community Master Plan," which reflected the need to address the parking problems in the central business district of the downtown area of Princeton. After studying the problem, the Master Plan Subcommittee of the Planning Board recommended construction of a parking facility on the subject, municipally-owned site.
After reviewing and approving the proposal by its Subcommittee, the Planning Board issued a report to the Borough Council on July 8, 1999, recommending construction of a multi-level parking garage facility on that site, in conjunction with a new public library building. In October 1999, the Borough Council authorized Carl Peters, the Borough Engineer, and Lee Solow, its Regional Director of Planning, to conduct a comprehensive study of the parking conditions in the central business district. Peters and Solow publicly presented an analysis of parking supply and demand in the central business district to the Borough Council at its February 1, 2000 meeting, and to a meeting of the Planning Board on February 15, 2000.
On February 16, 2000, members of the public were invited to attend a February 22, 2000 Borough Council meeting to discuss downtown development issues. Notice of that meeting was published in several local newspapers. Consultants and professionals commissioned by the Borough appeared at that meeting, discussed development issues, and presented a survey and analysis of traffic movement in the downtown area.
On April 13, 2000, the Planning Board's Subcommittee issued a second report, concluding that the need for parking was critical and should be addressed prior to approving further development applications in the downtown area. The Subcommittee recommended retaining professionals to analyze the economic feasibility of constructing a public parking garage at the subject site.
Desman Associates was commissioned by the Borough Council to conduct a feasibility study for the construction of a parking facility on the subject site. Princeton Future, Inc., a citizens' group, submitted an alternative proposal. The proposals by Desman Associates and Princeton Future were presented to the Borough Council at its April 19, 2001 meeting.
In the interim, based upon two decades of study, the Princeton Public Library Trustees announced plans to build a new library facility on its existing site in the central business district based on a commitment by the Borough Council to provide additional parking to coordinate with the proposed opening of that new library facility.
The Borough Council retained the planning firm of Brown & Kenner Urban Design to work with the Borough and Princeton Future to prepare a plan that would include construction of a multi-level, publicly-owned parking garage and a public plaza with housing and retail stores. Brown & Kenner presented such a plan *691 and report to the Borough Council and Planning Board in July 2001.
At its October 18, 2001 meeting, the Planning Board adopted the "Princeton Community Master Plan 2001 Reexamination Report," as the "Princeton Community's Master Plan." That plan concluded that construction of a new parking facility would stimulate and insure the economic vitality of the downtown area. The plan noted that the Borough Council was then considering whether a redevelopment plan pursuant to the LRHL would be appropriate for development of the subject area.
In December 2001, the Borough Council retained The Atlantic Group, an urban development consulting firm, to prepare a report addressing the feasibility of designating the subject, municipally-owned, 2.13-acre properties as an "area in need of redevelopment" pursuant to the LRHL. The Borough Council directed that, in addition to addressing the parking needs, The Atlantic Group should investigate the goal of additional residential housing, including affordable housing units.
Based on recommendations of The Atlantic Group, on January 8, 2002, pursuant to N.J.S.A. 40A:12A-6, the Borough Council passed a resolution authorizing and directing the Planning Board to conduct an investigation and hold a public hearing to determine whether the subject area qualified as an area in need of redevelopment pursuant to the LRHL. The Borough Council also issued a "Request for Qualifications" that invited design/building companies to state their interest in participating in the contemplated redevelopment, and to submit their qualifications. Five submissions pursuant to that request were considered by the Borough Council.
On January 21, 2002, the Planning Board released a report, prepared by The Atlantic Group, finding a need for redevelopment of that site under the LRHL. The report concluded that the proposed site qualified for redevelopment pursuant to N.J.S.A. 40A:12A-5(d) and -5(e). On February 7, 2002, the Planning Board conducted a publicly-advertised work session. In testimony given at that work session, Solow described the procedure for designating an area in need of redevelopment under the LRHL, and the role of the Planning Board in determining whether that designation should be made. Lawrence O. Houstoun, Jr., a professional planner and member of The Atlantic Group, testified regarding the report's recommendation for redevelopment under the LRHL, as did Patrick J. Henry, another principal of The Atlantic Group. Houstoun explained that the existing surface parking lot was in a state of obsolescence because it represented "yesterday's solutions" in a municipality such as Princeton, where "[s]tructured parking is now the standard." Houstoun noted that downtown Princeton already had two multi-story parking facilities, which satisfy parking demands while allowing land to be utilized most efficiently. Houstoun explained that because the existing surface parking lot had been assembled over time, its irregular configuration limited the number of available spaces and inhibited "urban center uses."
Houstoun also stated that the lands were not fully productive, produced no tax revenue, and did not adequately support adjacent uses. He explained that by permitting private investment in some portions of the redevelopment project through residential or retail uses, while maintaining the dual purposes of providing more than the present parking supply and public open space, the municipality would be able to maximize the use and benefits of its property.
In accordance with N.J.S.A. 40A:12A-6(b)(1), the Board caused a map to be prepared showing the boundaries of the *692 proposed redevelopment area. In accordance with N.J.S.A. 40A:12A-6(b)(3), the Planning Board published notices scheduling a public hearing for February 21, 2002, on the issue of whether the proposed area should be classified as an area in need of redevelopment pursuant to the LRHL. On February 21, 2002, principals from The Atlantic Group appeared at the scheduled meeting; no one from the public attended or voiced opposition to the proposal. After conducting a hearing that outlined the proposed designation, the Planning Board unanimously recommended to the Borough Council that the subject site be designated as an area in need of redevelopment.
On February 26, 2002, the Borough Council passed a resolution designating the subject site as an area in need of redevelopment pursuant to N.J.S.A. 40A:12A-5(d) and -5(e) of the LRHL. On March 18, 2002, the Borough Council issued a "request for proposals," inviting five of the firms that had responded to the request for qualifications, to submit "financial and design ideas" for the proposed redevelopment.
On April 30, 2002, the Borough Council passed a resolution adopting a specific redevelopment plan and submitted it to the Planning Board for review. On June 6, 2002, the Planning Board conducted a public hearing regarding the redevelopment plan. There was testimony that the redevelopment plan was consistent with both the master plan and the State Development and Redevelopment Plan. At the conclusion of the hearing, the Planning Board voted to recommend adoption of the redevelopment plan by the Borough Council.
In June 2002, work commenced on the new library, and library officials informed the Borough Council that additional parking for library patrons would be needed by the end of 2003, the anticipated completion date. The Borough Council requested that two of the five building firms that had responded to the request for proposals, submit applications for "final, competitive analysis and negotiations." After reviewing the applications, the Borough Council made a preliminary selection of Nassau HKT Associates, LLC as its preferred developer/partner for the redevelopment project. On June 11, 2002, the Borough Council enacted an ordinance adopting the redevelopment plan, and passed a resolution selecting Nassau as the developer to complete the redevelopment project and to move forward with its design.
Nassau proceeded to develop specific engineering plans for the redevelopment project and, in November 2002, an engineering site plan and concept plan were submitted to the Planning Board for consideration. The proposed project consisted of a five-story parking garage containing approximately 500 parking spaces, a landscaped public plaza, and seventy-seven housing units, twelve of which would be committed to affordable housing. The project also entailed construction of two multi-story buildings that Nassau would lease from the Borough. Those buildings were to contain approximately 15,000 square feet of retail space on the ground level and approximately 75,000 square feet of residential space on the upper level. The lease and "payments in lieu of taxes" (PILOT) from Nassau, pursuant to N.J.S.A. 40A:12A-40, were to subsidize the operating costs of the parking garage and public plaza, and allow the Borough to maintain a reasonable parking fee structure.
Timely notices were published scheduling a public hearing before the Planning Board on the proposed site plan for the redevelopment project. On December 17, 2002, the Borough Council adopted an ordinance appropriating $13,500,000 for construction *693 of the project, and authorizing the issuance of bonds and notes to fund the project. On December 19, 2002, the Planning Board conducted a public hearing and approved the site plan.
On January 9, 2003, plaintiff, a non-profit corporation that includes local merchants and residents who opposed the project, in an attempt to halt the project, filed petitions containing over 800 signatures with the Borough Clerk, challenging the bond ordinance and attempting to compel a referendum. Following rejection of their petitions, plaintiffs filed a complaint in lieu of prerogative writs in the Law Division against defendant on January 10, 2003, seeking a judgment declaring that the subject site was not blighted and not in need of redevelopment; compelling a public referendum on the project to be placed on the ballot at the next general election; and enjoining the Borough Council from proceeding with the bond sale and project.
On or about January 17, 2003, the defendant filed a motion to dismiss the complaint as being time-barred or, in the alternative, for summary judgment. On February 21, 2003, Judge Feinberg issued a written opinion and entered an order denying the motion to dismiss and, pursuant to R. 4:69-6(c), enlarging the forty-five day time limit contained in R. 4:69-6(a) within which a complaint in lieu of prerogative writs can be filed to challenge the designation of the subject site as an area in need of redevelopment pursuant to the LRHL. The court concluded that the interest of justice warranted the enlargement based upon the issue of public interest involved.
On March 13, 2003, in light of the contentions by plaintiff that defendant had acted in bad faith, the trial court exercised its discretion and permitted the defendant to supplement the record to include materials outlining the history leading up to the designation of the redevelopment area. On March 26, 2003, Judge Feinberg conducted a hearing on the motions for summary judgment filed by both parties. On March 31, 2003, the court issued a written decision, granting summary judgment in favor of defendant, dismissing plaintiffs' claims. A judgment memorializing that decision was entered on April 14, 2003.
The judge concluded that "the Borough acted well within its broad statutory authority to designate the study site as a redevelopment area, on the basis of the substantial credible evidence in the record." The judge stated that "plaintiffs cannot sustain their challenge merely by questioning the wisdom of the Borough or the Planning Board, or by suggesting alternative courses of action." The judge ruled that plaintiffs must "show that the particular designation made by the Borough is unsupported by substantial credible evidence, such that it is arbitrary or capricious."
The judge rejected plaintiffs' contention that redevelopment is limited to blighted areas and, therefore, not appropriate in Princeton, stating
Concerned Citizens ask this Court to engraft another restriction on the plain words of the LRHL. However, as the case law demonstrates, the LRHL has been liberally and flexibly interpreted precisely so that it can be adapted to meet the diverse redevelopment needs of all New Jersey municipalities.
The trial judge also rejected plaintiffs' interpretation of the LRHL as limiting redevelopment of public land to the criteria set forth in N.J.S.A. 40A:12A-5(c). To the contrary, the judge found that "the Borough was not limited in its decision of whether the study area qualified as one in need of redevelopment to the subsection (c)." The judge stated that the plain language of the LRHL and the applicable *694 case law make clear that municipally-owned land can be designated for redevelopment pursuant to any one of the seven subsections set forth in N.J.S.A. 40A:12A-5, including subsections (d) and (e) as applied by the Borough Council. The judge explained:
[Plaintiffs] mistakenly contend that subsection (c) is the only appropriate section under which the Borough could have designated the study area as one in need of redevelopment. The statute does not require that municipally owned land be subject to redevelopment only through that section, rather it remains one of seven sections that can be utilized by a municipality in contemplation of redevelopment. In fact the pre-amble to section N.J.S.A. 40A:12A-5 states that the study area can be designated as one in need of redevelopment pursuant to any of the sub-sections.
The judge also found that defendant's "reliance upon the conclusions of a redevelopment consultant, The Atlantic Group, was entirely proper." The judge observed that "there is no requirement that an individual preparing a report regarding a redevelopment be qualified as an expert." Notwithstanding, the judge found Houstoun and Henry were "qualified to render an opinion as experts in urban development regarding Princeton Borough's redevelopment plan." Concluding that plaintiffs had not satisfied their burden, the judge granted summary judgment dismissing the complaint.
On appeal, plaintiffs present the following arguments for our consideration:
POINT 1
THE COURT MUST REVERSE AND REMAND THE LAW DIVISION RULING BECAUSE THE LAW DIVISION (1) PURPORTED TO GRANT "SUMMARY JUDGMENT" FOR THE DEFENDANTS WHICH DID NOT FILE A MOTION FOR "SUMMARY JUDGMENT" ON THE MERITS AND (2) FAILED TO CONSIDER ANY OF THE UNDISPUTED MATERIAL FACTS SUBMITTED BY PLAINTIFFS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT.
POINT 2
THE DEFENDANT'S EFFORTS TO DEFEND THE LAW DIVISION'S ERRORS ARE MERITLESS, MISLEADING, AND BASED ON ERRONEOUS STATEMENTS OF THE RECORD.
POINT 3
THE LAW DIVISION FAILED TO CONDUCT THE EVIDENTIARY HEARING WHICH WAS MANDATED BY THE SUPREME COURT AND IMPROPERLY PERMITTED THE DEFENDANT TO SUPPLEMENT THE RECORD AT THE ELEVENTH HOUR WITHOUT HOLDING A LYONS HEARING IN WHICH BOTH PARTIES WOULD HAVE BEEN PERMITTED TO SUPPLEMENT THE RECORD.
POINT 4
THIS IS THE SECOND TIME IN THE PAST YEAR THAT THIS SAME LAW DIVISION COURT HAS COMMITTED THE SAME OR SIMILAR SERIOUS AND REVERSIBLE ERRORS.
POINT 5
DEFENDANT USED THE WRONG SECTION OF THE LRHL TO INVESTIGATE THE MUNICIPAL PARKING LOT SITES.
POINT 6
BECAUSE THE ATLANTIC GROUP REPORT DID NOT PRESENT RELEVANT AND USEFUL FACTS TO SUPPORT ITS CONCLUSIONS, IT REPRESENTS WORTHLESS "NET *695 OPINION" TESTIMONY WHICH DOES NOT PROVIDE THE "SUBSTANTIAL EVIDENCE" REQUIRED TO SUPPORT A "BLIGHTED AREA" DESIGNATION.
On cross-appeal, defendant argues:
POINT ONE
THE TRIAL COURT ERRED IN WAIVING THE 45-DAY FILING LIMITATION SET FORTH IN RULE 4:69-6(a) AND RULING THAT THE COMPLAINT CHALLENGING THE "AREA IN NEED OF REDEVELOPMENT" DESIGNATION WAS NOT TIME BARRED.
A. The trial court improperly concluded that plaintiffs had raised an issue of sufficient public importance to warrant relaxation of the 45-day filing limit.
B. The Borough's reliance on the unchallenged redevelopment area designation warranted dismissal of the plaintiff's untimely complaint.

I.
We first address defendant's contention in its cross-appeal that the trial court erred in denying its motion to dismiss plaintiffs' complaint because it was filed more than ten months after the challenged redevelopment designation. Rule 4:69-6 provides, in pertinent part:
(a) General Limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule.

* * * *
(c) Enlargement. The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires.
In denying defendant's motion to dismiss the complaint as untimely, the judge stated:
"[A] court may grant an extension based on the following: (1) Important and novel constitutional questions; (2) Informal or ex parte determinations of legal questions by administrative officials; or (3) Important public rather than private interests, which require adjudication or clarification."
Although the judge concluded that plaintiffs had not raised a novel constitutional question, and that ex parte proceedings were not at issue, she ruled that plaintiffs were "entitled to an enlargement of the time for filing an action under Rule 4:69-6(c)," on the basis of the "strong public interest in this case."
The judge noted that the petitions submitted by plaintiffs contained 843 signatures of registered voters, demonstrating a strong public interest that would not otherwise be addressed in the event of dismissal. Although the judge gave recognition to the "important policy of repose" underlying the time constrictions contained in Rule 4:69-6, she noted that the complaint had been filed less than one year from the time of accrual and within forty-five days of the adoption of the bond ordinance.
The underlying purpose of the time limitation is, indeed, to "give an essential measure of repose to actions taken against public bodies." Washington Tp. Zoning Bd. of Adjustment v. Washington Tp. Planning Bd., 217 N.J.Super. 215, 225, 525 A.2d 331 (App.Div.), certif. denied, 108 N.J. 218, 528 A.2d 36 (1987). With respect to designation of an area in need of redevelopment by a municipality under the LRHL, N.J.S.A. 40A:12A-6(b)(7) provides:

*696 If a person who filed a written objection to a determination by the municipality pursuant to this subsection shall, within 45 days after the adoption by the municipality of the determination to which the person objected, apply to the Superior Court, the court may grant further review of the determination by procedure in lieu of prerogative writ; and in any such action the court may make any incidental order that it deems proper.
Here, the subject redevelopment designation was formally adopted by the Borough Council on February 26, 2002. Thus, any challenge to that designation should have been brought within forty-five days thereof. It was not; the complaint was filed on January 10, 2003.
However, we conclude there was ample basis for the trial court's ruling that the subject redevelopment designation was of sufficient public interest to warrant relaxation of the forty-five-day filing limitation through application of Rule 4:69-6(c). Plaintiffs alleged numerous violations and misapplication of the LRHL, as well as arbitrary and capricious municipal action in the redevelopment designation of public lands. Further, as noted by the judge, the redevelopment designation implicated the expenditure of public funds through the issuance of bonds, and plaintiffs had submitted a significant number of signatures opposing the project, demonstrating a strong public interest.

II.
Plaintiffs have raised several procedural issues. They contend the trial judge failed to comply with court rules governing summary judgment motions. Specifically, plaintiffs claim defendant never filed a motion for summary judgment on the merits, and that the judge failed to consider their motion for summary judgment or address the evidence supporting plaintiffs' statement of material facts. Plaintiffs also contend the judge should not have adjudicated the merits of their complaint because defendant never responded to their statement of material facts. Plaintiffs further argue that the trial judge failed to conduct a pretrial conference as required by Rule 4:69-4 to afford the parties an opportunity to mark exhibits and designate the record. We reject these contentions.
Plaintiffs' claim that defendant did not file a motion for summary judgment on the merits is without merit. On January 17, 2003, defendant filed a motion to dismiss the complaint as untimely or, in the alternative, for summary judgment declaring that the redevelopment designation by the Borough Council was based on substantial evidence.
Plaintiffs' contention that the trial judge failed to comply with the requirements of Rule 4:46-2 governing summary judgment motions is also without merit. Rule 4:46-2(c) provides, in pertinent part, that the court shall render judgment "forthwith if the pleadings ..., together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
On February 21, 2002, the initial argument date for consideration of defendant's motion, the judge made clear that even though the parties had addressed the merits in their respective briefs, she was limiting argument to the issue of timeliness because consideration of the merits was premature. However, the judge stated that once the question of timeliness was resolved, "[t]here is no doubt in my mind... [that] I would consider these cases really being handled ... on cross motions for summary judgments."
*697 After resolving the issue of timeliness in favor of plaintiffs, the judge inquired of counsel whether the remaining issue on the merits was primarily "whether or not the Borough properly designated the site as an area in need of redevelopment." Plaintiffs' counsel responded: "I completely agree with that." The judge then advised counsel that she would conduct further oral argument, on an expedited basis, after allowing for any additional submissions related to the redevelopment designation.
The judge issued a detailed written decision on the timeliness issue on February 21, 2003, and stated therein that she planned to consider defendant's motion for summary judgment on an expedited basis. On February 25, 2003, the judge entered an order denying defendant's motion to dismiss and setting forth a detailed schedule for briefing, to conclude with oral argument on March 21, 2003. The record on appeal reflects no objection by plaintiffs to this procedure.
Rule 4:46-2 requires that a motion for summary judgment be supported by a brief and a statement of material facts "with or without supporting affidavits." In compliance therewith, the papers originally filed in support of defendant's January 17, 2003 motion for summary judgment included a statement of material facts supported by citation to the record, and supporting certifications with exhibits. The twenty-five exhibits attached included various resolutions and ordinances relating to the redevelopment designation, the redevelopment plan approval and financing; the report of The Atlantic Group; a January 28, 2002 planning report; the legal notices challenged by plaintiffs as being inadequate; various maps submitted to the Planning Board; and voluminous information concerning the redevelopment plan that had been adopted in June 2002.
Rule 4:46-2(b) also requires that "[a] party opposing the motion shall file a responding statement either admitting or disputing each of the facts in the movant's statement." On February 4, 2002, plaintiffs submitted a statement of material facts in opposition to defendant's motion. Plaintiffs also filed a brief "in opposition to defendants' motion ... for summary judgment," supported by twenty-one certifications from individual taxpayers, in which they fully argued the merits of the area designation. Defendant then filed a February 14, 2003 reply brief, that included a response to plaintiffs' responsive statement of facts. Accordingly, it is clear that defendant satisfied the requirements of Rule 4:46-2.
On March 10, 2003, in accordance with the court's expedited schedule for resolution of the summary judgment motion, defendant submitted the supplemental certifications of Houstoun, Henry and Solow. On March 14, 2003, plaintiffs submitted another statement of material facts, as well as a brief, purportedly in support of their cross-motion for summary judgment. Plaintiffs now argue that since defendant failed to respond to their motion for summary judgment, the facts set forth therein were deemed admitted, and summary judgment should have been granted in their favor. This contention is devoid of merit.
First, plaintiffs did not allege during oral argument that there were procedural deficiencies. Second, since there were no material differences between the facts alleged in each of plaintiffs' statements of material facts, there was no basis for defendant to submit yet another responding statement.
Third, the scope of the court's inquiry was whether there was substantial evidence supporting the redevelopment designation.
*698 The material facts pertinent to that inquiry were presented primarily through the various ordinances and resolutions, and the transcripts of the proceedings before the Planning Board. The so-called "conflicting evidence" consisted of certifications of various concerned citizens; those certifications were not relevant nor probative to the issue to be determined by the court. In the final analysis, those material facts relevant to a determination of that legal issue were undisputed. Therefore, even if there had been some procedural deviation from the court rules, it would be immaterial to a proper resolution of the focal issue. Moreover, given the thoughtful management of the action by the trial judge, plaintiffs' claim that the judge neglected to conduct a pretrial conference is unwarranted.
Plaintiffs also contend that the trial court failed to make any findings of fact, in violation of Rule 1:7-4(a), and "[neither] addressed [n]or evaluated any of the factual evidence that plaintiffs proffered under oath in support of their motion for summary judgment." Rule 1:7-4(a) requires that a court "by opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law." It is evident from our review of the seventy-two page written decision issued by Judge Feinberg dated March 31, 2003, that these requirements were satisfied. The judge carefully summarized the facts underlying her decision to grant summary judgment in favor of defendant, and fully analyzed the context of those facts pertinent to the legal issues presented.

III.
Plaintiffs also argue that because the redevelopment designation by the Borough Council is based solely on the report of The Atlantic Group, which represents a "net opinion," it is not based upon substantial evidence. They further contend that the report constitutes incompetent evidence because it is not signed and does not contain a statement of the "credentials, expertise or experience" of Houstoun and Henry. Plaintiffs also assert that the report and the determination by the Borough Council "misconstrued" the LRHL by recommending designation pursuant to the criteria set forth in subsections (d) and (e) of N.J.S.A. 40A:12A-5. Plaintiffs contend that because the subject site is municipally owned, the only applicable criteria for designation of the site as one in need of redevelopment are those set forth in subsection (c).
Plaintiffs argue that subsections (d) and (e) "by their terms, do not apply to these municipal lots or public streets" included in the redevelopment site. According to plaintiffs, because the redevelopment site fails to satisfy the statutory criteria for a determination of "blight," the redevelopment designation is not supported by substantial evidence.
Finally, plaintiffs argue, for the first time on appeal, that the interpretation given the LRHL by defendant and the trial judge, is unconstitutional because it is inconsistent with the "blighted area clause" of the State constitution.
Our analysis of these arguments begins with the statute. N.J.S.A. 40A:12A-5[1] provides:
A delineated area may be determined to be in need of redevelopment if, after investigation, notice and hearing as provided in [N.J.S.A. 40A:12A-6], the governing body of the municipality by *699 resolution concludes that within the delineated area any of the following conditions is found:
a. The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions.
b. The discontinuance of the use of buildings previously used for commercial, manufacturing or industrial purposes; the abandonment of such buildings; or the same being allowed to fall into so great a state of disrepair as to be untenantable.
c. Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.
d. Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.
e. A growing lack or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real property therein or other conditions, resulting in a stagnant or not fully productive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare.
f. Areas, in excess of five continuous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone, tornado, earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.
g. In any municipality in which an enterprise zone has been designated pursuant to the "New Jersey Urban Enterprise Zones Act," ... the execution of the actions prescribed in that act for the adoption by the municipality and approval by the New Jersey Urban Enterprise Zone Authority of the zone development plan for the area of the enterprise zone shall be considered sufficient for the determination that the area is in need of redevelopment pursuant to [N.J.S.A. 40A:12A-5 and 40A:12A-6] for the purpose of granting tax exemptions within the enterprise zone district ... or the adoption of a tax abatement and exemption ordinance[.]...
[Emphasis added.]
We first address the applicable standard of review. Redevelopment designations, like all municipal actions, are vested with a presumption of validity. Levin v. Township Comm. of Tp. of Bridgewater, 57 N.J. 506, 537-39, 274 A.2d 1 (1971); Hirth v. City of Hoboken, 337 N.J.Super. 149, 161, 766 A.2d 803 (App. Div.2001). It has long been recognized that "community redevelopment is a modern part of municipal government." Levin, supra, 57 N.J. at 540, 274 A.2d 1 (citing Wilson v. Long Branch, 27 N.J. 360, 392, 142 A.2d 837, cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 *700 (1958)). Thus, judicial review of a redevelopment designation is limited solely to whether the designation is supported by substantial credible evidence. Levin, supra, 57 N.J. at 540, 274 A.2d 1. This heightened deference is codified in the LRHL, which provides that an "area in need of redevelopment" designation "if supported by substantial evidence, and, if required, approved by the commissioner, shall be binding and conclusive upon all persons affected by the determination." N.J.S.A. 40A:12A-6(b)(5). Accordingly, it is not for the courts to "second guess" a municipal redevelopment action, "which bears with it a presumption of regularity." Forbes v. Board of Trs. of Tp. of S. Orange Vill., 312 N.J.Super. 519, 532, 712 A.2d 255 (App.Div.), certif. denied, 156 N.J. 411, 719 A.2d 642 (1998). As the Supreme Court pertinently stated in Lyons v. City of Camden, 52 N.J. 89, 98, 243 A.2d 817 (1968):
Clearly the extent to which the various elements that informed persons say enter into the blight-decision making process are present in any particular area is largely a matter of practical judgment, common sense and sound discretion. It must be recognized that at times men of training and experience may honestly differ as to whether the elements are sufficiently present in a certain district to warrant a determination that the area is blighted. In such cases courts realize that the Legislature has conferred on the local authorities the power to make the determination. If their decision is supported by substantial evidence, the fact that the question is debatable does not justify substitution of the judicial judgment for that of the local legislators.
Thus, the burden is on the objector to overcome the presumption of validity by demonstrating that the redevelopment designation is not supported by substantial evidence, but rather is the result of arbitrary or capricious conduct on the part of the municipal authorities. Levin, supra, 57 N.J. at 537, 274 A.2d 1; Bryant v. City of Atlantic City, 309 N.J.Super. 596, 610, 707 A.2d 1072 (App.Div.1998). Absent such a demonstration on the part of the objector, sufficient to raise a material factual dispute, summary judgment must be granted in favor of defendants. Rule 4:46; see, e.g., Jersey City Chapter of Prop. Owner's Protective Ass'n v. City Council of Jersey City, 55 N.J. 86, 101-102, 259 A.2d 698 (1969) (where objectors did not tender any evidence before either the Planning Board or the Law Division that rebutted substantial evidence in support of redevelopment designation, summary judgment should have been granted without any need for a plenary trial).
Underlying plaintiffs' challenge to this redevelopment designation is their contention that property located in Princeton Borough cannot be "blighted," because of the Borough's relative affluence. However, there is nothing in the statute itself, its legislative history, or the case law to suggest that redevelopment designations in affluent areas are inappropriate, if the statutory criteria are otherwise met. Indeed, as recognized by the Supreme Court in Levin, supra, the State's redevelopment law "`goes far beyond the elimination of the perceptually offensive slums'" and "an area does not have to be a slum to make its redevelopment a public use...." 57 N.J. at 514, 274 A.2d 1 (quoting Jersey City, supra, 55 N.J. at 97-98, 259 A.2d 698). Rather,
from the very beginning of the efforts to deal with the problem of blight, the vista has been a broad and comprehensive one. The Legislature revealed as its clear purpose not only the clearance, replanning, development or redevelopment of urban blight, but suburban and rural blight as well.
*701 [Levin, supra, 57 N.J. at 514, 274 A.2d 1.]
Review of the legislative history underlying the LRHL reveals that it was primarily intended to "codify, simplify and concentrate" the various statutes related to the exercise of redevelopment and housing powers by local governments in an effort to assist in promoting redevelopment. Senate Cmty. Affairs Comm. Statement, Assembly Bill No. 1138; L. 1992, c. 79; N.J.S.A. 40A:12A-6(c). As we observed in Forbes, supra, 312 N.J.Super. at 526, 712 A.2d 255, the substantive provisions of the LRHL are "virtually identical" to those of its predecessor statute, the Blighted Area Act, N.J.S.A. 40:55-21.1.
The term "blighted area" has its origins in N.J. Const. Art. VIII, § 3, ¶ 1, which provides in full as follows:
The clearance, replanning, development or redevelopment of blighted areas shall be a public purpose and public use, for which private property may be taken or acquired. Municipal, public or private corporations may be authorized by law to undertake such clearance, replanning, development or redevelopment; and improvements made for these purposes and uses, or for any of them, may be exempted from taxation, in whole or in part, for a limited period of time during which the profits of and dividends payable by any private corporation enjoying such tax exemption shall be limited by law. The conditions of use, ownership, management and control of such improvements shall be regulated by law.
The Constitution, however, does not define "blighted areas." As noted by the Supreme Court in Wilson, supra, 27 N.J. at 381-82, 142 A.2d 837:
Manifestly, the grant of power [accorded by the Constitution] contemplated development and implementation by the Legislature. Definition of blight was the ordinary and expected incident of the exercise of that power and no reasonable argument can be made that the connotation ascribed to it overreaches the public purpose sought to be promoted by the Constitution.
In rejecting a constitutional challenge to the definition of "blight" contained in the since-repealed "Blighted Area Act," N.J.S.A. 40:55-21.1 to -21.14,[2] the Wilson Court found that it constituted a community consensus and expressed a common understanding of what is meant by blight subject to public remediation. Id. at 370, 142 A.2d 837. The Court explained:
Community redevelopment is a modern facet of municipal government. Soundly planned redevelopment can make the difference between continued stagnation and decline and a resurgence of healthy growth. It provides the means of removing the decadent effect of slums and blight on neighboring property values, of opening up new areas for residence and industry. In recent years, recognition has grown that governing bodies must either plan for the development or redevelopment of urban areas or permit them to become more congested, deteriorated, obsolescent, unhealthy, stagnant, inefficient and costly.
[Ibid.]
Although the original redevelopment enactments focused on the alleviation of residential slums, by the time of the 1992 adoption of the LRHL,
the Legislature had recognized ... that the concept of blight also embraced the total unproductivity of unimproved vacant land and that commercial blight embraced not only economic deterioration in tax revenue terms but also all the *702 adverse physical conditions of property that individually or in combination impeded its reasonable productivity and resulted in its negative impact upon the general welfare and economic well-being of the community. Consequently, an area in which such properties predominated and which established its general character was eligible for the blight declaration.
[Forbes, supra, 312 N.J.Super. at 525, 712 A.2d 255.]
In Forbes, id. at 528, 712 A.2d 255, the plaintiffs had argued that a redevelopment designation pursuant to the LRHL, specifically N.J.S.A. 40A:12A-5(d) and -5(e), "was in derogation of the constitutional `blight' imperative." In evaluating this claim, Judge Pressler compared the definitional provisions of the repealed Blighted Area Act, N.J.S.A. 40:55-21.1, with those of the LRHL, N.J.S.A. 40A:12A-5, and found that they were "virtually identical." Id. at 526-27, 712 A.2d 255. Judge Pressler observed that the "definition of blight set forth in the ... Blighted Area Act," which was "virtually unchanged by the LRHL," had withstood a constitutional challenge in Wilson "more than forty years preceding the LRHL" and has not been successfully challenged on constitutional grounds since. Forbes, supra, 312 N.J.Super. at 528-29, 712 A. 2d 255.
Although we acknowledged the Legislature's replacement of the term "blight" with "in need of redevelopment," we concluded that this change in verbiage was "cosmetic only" since the definitional standards for such a designation remained virtually unchanged. Ibid. Thus, the designation of an "area in need of redevelopment" pursuant to the LRHL is the equivalent of a blight designation for purposes of satisfying N.J. Const., Art. VIII, § 3, ¶ 1. Id. at 528, 712 A.2d 255. Therefore, "the area must be found to be blighted in conformance with the same standards as theretofore even though we no longer call it a blighted area but rather an area in need of redevelopment." Id. at 529, 712 A.2d 255.
The LRHL specifically provides that "[a]n area determined to be in need of redevelopment pursuant to this section shall be deemed to be a `blighted area' for the purposes of Article VIII, Section III, paragraph 1 of the Constitution." N.J.S.A. 40A:12A-6(c). Thus, if a redevelopment designation made pursuant to the definitional standards of the LRHL is supported by substantial evidence, then it is simply irrelevant that the area so designated does not conform with an objector's notion of a blighted area.
A reading of the plain language of the LRHL criteria for redevelopment, taken together with its legislative history, makes it clear that the Legislature intended the LRHL to encompass a broad range of circumstances that a municipality could take into account in deciding whether an area is in need of redevelopment, without any consideration of the concept of relative affluence. In particular, N.J.S.A. 40A:12A-5 authorizes a designation of a delineated area as an area in need of redevelopment, if "any" of the seven "conditions" enumerated therein are found.
As the trial judge correctly determined, defendant properly exercised its broad discretion to designate the subject site as an "area in need of redevelopment" pursuant to subsections (d) and (e), based on the results of The Atlantic Group's investigation, as memorialized in its report, and supplemented by the sworn testimony of Houstoun and other witnesses before the Planning Board.
With respect to the subsection (d) criteria of "obsolescence," Spruce Manor Enter v. Bor. of Bellmawr, 315 N.J.Super. *703 286, 289-95, 717 A.2d 1008 (Law Div.1998), discussed by Judge Feinberg, is instructive. There, the court was called upon to determine the meaning of obsolescence as it related to the redevelopment designation of a housing complex. The designation was premised upon the planning board's finding that the housing complex did not meet the current design standards, and was therefore obsolete. Id. at 289, 717 A.2d 1008. The Law Division observed that although the apartment complex was approximately thirty-years of age at the time of the redevelopment designation, the only outstanding violation was that it lacked fire doors. Ibid. Accordingly, the Law Division found that the planning board's finding that the complex was obsolete was not supported by substantial evidence. Id. at 295, 717 A.2d 1008. The court explained that obsolescence was not synonymous with depreciation or wear and tear. Ibid. Instead, obsolescence "is the process of falling into disuse and relates to the usefulness and public acceptance of a facility." Ibid. The court concluded that the building could not be obsolete because it met the current standards regarding habitability, and there was no evidence in the record to show that the allegedly "obsolete layout [was] detrimental to the safety, health, morals or welfare of the community." Id. at 296, 717 A.2d 1008.
Here, the determination that the surface parking lot met the requirements set forth in subsection (d) was supported by substantial evidence of "obsolescence" detrimental to the safety, health, morals or welfare of the community. The Atlantic Group concluded that the present surface parking lot represented an "obsolete" land use that was exacerbated by a "faulty design," essentially proving to be "detrimental... to the welfare of the community." As Houstoun testified, a surface lot represents "yesterday's solution" in a town such as Princeton, where "structured parking is now the standard." According to his testimony, the subject lot lacked the efficiency necessary to satisfy the increased demands occasioned by the Borough's growth. By implementing modern structured parking, the increased demands would be met, while conserving land for other purposes that would increase the tax base. In addition, by correcting the "irregular configuration" and "faulty design" of the parking on the subject site, The Atlantic Group concluded that land would become available for more compatible urban center uses. The Atlantic Group ultimately determined in its report that the condition of the current site is "harmful to the welfare of the community," since it "is not fully productive ... [and] ... brings no tax revenue to the Borough and does not adequately support adjacent uses."
Also instructive in our analysis is Forbes, supra, 312 N.J.Super. at 528-32, 712 A. 2d 255, where the redevelopment designation of the central business district pursuant to subsections (d) and (e) was upheld. We observed that
what is in issue here is a central business district that, like many other urban and suburban business districts throughout this State, has suffered over the last decades from the fate of creeping deterioration as retail activity has become more and more concentrated in large shopping malls and the consequent loss of that economic vitality has made the center of town less and less attractive for other commercial uses.
[Id. at 530, 712 A.2d 255.]
We found there was substantial evidence that the central business district "was becoming stagnant, deteriorated, obsolescent and that its economic vitality was seriously declining," including evidence of "unproductive and inaccessible rear areas *704 of commercial properties" and "functionally obsolescent structures." Ibid.
Further, as recognized by the Supreme Court in Levin, supra, the realization, through redevelopment, of the "maximum potential usefulness" of an area that is blighted by reason of "stagnation" and "unproductiveness," is a legitimate goal of redevelopment activity as it contributes to healthy growth and optimum community benefit. 57 N.J. at 515, 539-40, 274 A.2d 1. "It is no longer open to question that the elimination of a blighted area of the nature described in N.J.S.A. 40:55-21.1(e) is a public purpose intimately related to the public health and welfare." Id. at 540, 274 A.2d 1.
Here too, the redevelopment designation of a surface parking lot in the heart of Princeton's central business district was supported by substantial evidence. Houstoun explained that the limitations of the subject surface parking lot negatively affected its economic vitality. In particular, the surface lot "separate[s] shops and deters shoppers from walking from destination to destination," whereas structured parking would add "to Princeton's appeal to shoppers" while addressing the need for additional parking convenient to the library and shopping. In discussing the "other conditions" criteria of subsection (e), Houstoun stated that the "lack of investment leading to construction of new ratable improvements," caused this parking lot in the central business district to remain in a "stagnant and unproductive condition." Houstoun explained that if the area were redesigned, however, it would become more competitive and attractive and economically viable by encouraging private investment and raising tax revenue. Additionally, structured parking would create space for additional "retail establishments ... adding to Princeton's appeal to shoppers by creating additional destinations."
The Atlantic Group also found that the elimination of the unsightly surface parking lot would make the site "significantly more attractive by creating a plaza adjacent to and complimenting the new Princeton Public Library." These results would inevitably "serv[e] the public health, safety and welfare" of the entire community.
Based upon the ample evidence before the Planning Board, the surface parking lot in question clearly fits within the criteria set forth in subsections (d) and (e) of N.J.S.A. 40A:12A-5 as an area having a "faulty arrangement or design" or with a "deleterious land use or obsolete layout" or "not fully productive." Given the substantial evidence supporting the redevelopment designation pursuant to subsections (d) and (e), Judge Feinberg correctly concluded that plaintiffs had failed to satisfy their significant burden of demonstrating that the redevelopment designation was arbitrary or capricious.
Nonetheless, plaintiffs contend that a municipality may only utilize the limited criteria set forth in subsection (c) when designating any municipally-owned area in need of redevelopment. A plain reading of subsection (c) leads to the conclusion that it refers to public or private vacant land which, by reason of remoteness, inaccessibility, topography or soil conditions, is not likely to be developed by private capital. However, we conclude that subsection (c) does not preclude a municipality from designating public land for redevelopment under any of the other subsections.
This conclusion finds support in Levin, supra, where the Court upheld a municipal determination that 120 acres of land, more than half of which was municipally owned or controlled, was blighted pursuant to a provision of the Blighted Area Act. 57 *705 N.J. at 517, 537-39, 274 A.2d 1. The provision at issue in Levin was N.J.S.A. 40:55-21.1(e), which is identical to its successor provision in the LRHL, N.J.S.A. 40A:12A-5(e). More specifically, the provision at issue in Levin provided that an area is blighted where there exists:
A growing or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real property therein and other conditions, resulting in a stagnant and unproductive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare.
[N.J.S.A. 40:55-21.1(e).]
In upholding the blight designation, the Court explained that "[i]f the condition of the land involved meets the specifications of any one of the five subsections [of N.J.S.A. 40:55-21.1] the finding of blight is unassailable." Id. at 510, 274 A.2d 1 (citing Wilson, supra, 27 N.J. at 392, 142 A.2d 837). Thus, Levin clearly supports the proposition that municipally-owned property may be designated for redevelopment pursuant to N.J.S.A. 40A:12A-5(e), or any other applicable subsection.
Plaintiffs' reliance on Winters v. Township of Voorhees, 320 N.J.Super. 150, 726 A.2d 1013 (Law Div.1998), in support of their reading of N.J.S.A. 40A:12A-5, is misplaced. Contrary to plaintiffs' contentions, the Winters court did not hold that municipal property could only be designated as a redevelopment area pursuant to N.J.S.A. 40A:12A-5(c), nor that subsection (c) could not be applied to private land. Instead, the court determined in Winters that municipal ownership alone was insufficient to satisfy subsection (c). Id. at 156, 726 A.2d 1013. The Law Division made clear, based on the plain language of the LRHL and fundamental principles of statutory interpretation, that the criteria in subsection (c) create two distinct categories of property. Id. at 155-56, 726 A.2d 1013. In dismissing the municipality's interpretation that public ownership alone satisfies subsection (c), the court explained:
The Township's interpretation does not comport with accepted rules of statutory construction. It is a rule of grammatical construction that separation of a qualifying phrase from antecedents by a comma evidences an intent that the phrase apply to all antecedents instead of solely to the immediately preceding one. In N.J.S.A. 40A:12A-5(c), a comma precedes the phrase "land that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital." Therefore, this phrase applies to all antecedents in the statute including the phrase "Land that is owned by the municipality."
[Winters, supra, 320 N.J.Super. at 155, 726 A.2d 1013 (citations omitted).]
In relying on Forbes, the Winters court reiterated that the "addition of public lands in N.J.S.A. 40A:12A-5(c) added a new category of lands which would still have to meet the requirement that the lands are not likely to be developed by private effort before a redevelopment designation could occur." Id. at 156, 726 A.2d 1013. Thus, Winters stands for the proposition that subsection (c) applies to two categories of vacant land: (1) public land that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is unlikely to be developed through private capital; and (2) private land that has remained so for a period of ten years and that, by reason of those same conditions, is unlikely to be developed through private capital.
*706 Therefore, defendant was not bound to apply subsection (c) merely because the redevelopment site constituted public land.
We also conclude that the trial court correctly rejected plaintiffs' attempt to overturn the redevelopment designation on the basis that the Planning Board's reliance on the evidence submitted by The Atlantic Group was arbitrary or inappropriate and, therefore, that the redevelopment designation was not supported by substantial evidence.
N.J.S.A. 40A:12A-4 authorizes a municipal governing body, or, at its direction, a planning board, to "[c]ause a preliminary investigation to be made ... as to whether an area is in need of redevelopment" and to make a redevelopment determination premised on the results of that investigation if it reveals that the area is in need of redevelopment. Nothing in this provision suggests that a planning board may not rely on a redevelopment consultant in conducting its investigation.
In Hirth, supra, 337 N.J.Super. at 162, 766 A.2d 803, the planning board and city council relied primarily upon the report of the board's planning consultant in concluding that a substantial portion of an industrial area in Hoboken was blighted. We upheld the City's redevelopment designation, concluding that a consultant's "report and testimony before the Board provided the `substantial evidence' required by N.J.S.A. 40A:12A-6(b)(5) to support a blight determination." Id. at 163, 766 A.2d 803. Similarly, the Supreme Court in Levin, supra, upheld a redevelopment designation that had been based "largely" on a consultant's report that was orally summarized at a planning board hearing. 57 N.J. at 524-26, 274 A.2d 1. In upholding a redevelopment designation in Forbes, supra, we cited the "meticulously drawn resolution and ordinance, the scrupulous adherence to the statute's procedural requirements, the series of professional planning reports, the community's views as they were expressed at public hearings, and the supplemental testimony." 312 N.J.Super. at 530, 712 A.2d 255.
Here, plaintiffs' challenges to the Planning Board's reliance on the report of The Atlantic Group are based, in part, upon the erroneous assumption that the rules of evidence apply to proceedings before municipal planning boards. To the contrary, N.J.S.A. 40:55D-10(e), which governs the conduct of hearings before planning boards relating to land use, explicitly provides that "technical rules of evidence shall not be applicable" to such hearings.
Furthermore, it is well established that a planning board has broad discretion in conducting its hearings, provided that any applicable statutory requirements are observed. Lyons v. City of Camden, 48 N.J. 524, 530, 226 A.2d 625 (1967); Lincoln Heights Ass'n v. Township of Cranford Planning Bd., 314 N.J.Super. 366, 377-78, 714 A.2d 995 (Law Div.1998), aff'd, 321 N.J.Super. 355, 729 A.2d 50 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). Neither N.J.S.A. 40A:12A-6(b) nor N.J.S.A. 40:55D-10setting forth the requirements for the conduct of such hearingsmandates that witnesses be qualified as experts. The only statutory requirement applicable to the testimony of Houstoun and Henry before the Planning Board is found in N.J.S.A. 40:55D-10(d), which requires that "the testimony of all witnesses relating to an application for development shall be taken under the oath or affirmation by the presiding officer." All of the witnesses appearing at the February 7, 2002, work session and the February 21, 2002, public hearing, were sworn.
We conclude that the actions of the Borough Council and the Planning Board in designating the surface parking lot an area *707 in need of development clearly met the substantial-evidence test. Since plaintiffs failed to meet their burden of overcoming the presumption of validity bestowed upon such a redevelopment designation, summary judgment was appropriately entered.

IV.
Plaintiffs also contend that the supplemental certifications of Henry, Houstoun and Solow should have been stricken pursuant to Lyons, supra, 48 N.J. at 534, 226 A.2d 625, which purportedly prohibits "sua sponte" or "unilateral" supplementation of the record in prerogative writ actions in the redevelopment context. More specifically, plaintiffs argue that a municipal defendant cannot supplement the record created before the planning board, except to rebut evidence first adduced by plaintiffs.
In denying plaintiffs' motion to strike the supplemental certifications, Judge Feinberg recognized that Lyons and its progeny, including Forbes, permit a municipality to supplement the record before the planning board in the context of a prerogative writs proceeding, with "further competent evidence." The judge observed that defendant was entitled to respond to plaintiffs' "allegations in [the] complaint that the Borough had not engaged in open and good faith discussions about the parking garage," and that "there was no opportunity to involve the public" throughout the redevelopment process. The supplemental materials were deemed relevant, as they directly addressed the issue of "fairness" raised by plaintiffs by demonstrating that discussions of the Borough's downtown parking shortage had been ongoing "well before 2002." The judge further explained that the court was entitled to take judicial notice of the public documents submitted with the Solow certification. Although the judge stated that she planned to consider the supplemental materials with an eye towards the "fairness" of the proceedings before the planning board, she intended to "primarily focus" on the "work session transcript." Additionally, when denying the motion to strike, the court afforded plaintiffs a one-week extension to file additional materials.
Thereafter, in her written decision granting summary judgment in favor of defendants, Judge Feinberg emphasized that "the record of the proceedings before the Planning Board and the Borough Council in January and February 2002 was more than sufficient to support the area designation," without resort to the supplemental materials. The judge further stated that "in reaching a determination as to whether the decision was supported by substantial evidence," she did not rely on the supplemental materials.
In Lyons, supra, the City of Camden planned to demolish numerous dwellings as part of a massive redevelopment project. 48 N.J. at 528-30, 226 A.2d 625. Several affected property owners appeared with an attorney at a public hearing before the planning board to challenge the "blight" declaration. Id. at 529-31, 226 A. 2d 625. However, plaintiffs' attorney had not been permitted to cross-examine witnesses in favor of the blight declaration. Id. at 530, 226 A.2d 625. At the ensuing prerogative writs hearing before the Law Division, plaintiffs "received the impression that the proceedings before the board could not be augmented by the testimony of witnesses or the introduction of exhibits." Id. at 534-35, 226 A.2d 625.
The Court remanded the matter to allow the plaintiffs to present pertinent evidence, reasoning as follows:
Under the circumstances, in justice to the plaintiffs whose homes undoubtedly will be taken eventually if the declaration of blight is sustained, we are of the *708 opinion that they should be given an opportunity to present to the Law Division any additional pertinent evidence they may have to show that the inclusion of their section of Northshore in the area declared blighted is not supported by substantial evidence.
[Id. at 535, 226 A..2d 625.]
The Court stated that it
desire[d] to make plain that when a planning board's or governing body's determination of blight is challenged by a proceeding in lieu of prerogative writ, the review is not confined to the record made below.
[Id. at 533, 226 A.2d 625.]
Under Lyons, Judge Feinberg was not required to confine the scope of review to the proceedings before the Planning Board in January and February 2002, particularly since it was only in the context of the prerogative writs action that plaintiffs had made allegations that defendant failed to act in "good faith" during the redevelopment proceedings. More specifically, paragraph 54 of the amended complaint alleged that the Planning Board "employed a `hasty, ad hoc procedure' for finding that the subject area in question is blighted and/or `an area in need of redevelopment' and, therefore, they failed to conduct a good faith `investigation' into the true and factual status of the subject property."
After defendant filed its motion to dismiss or in the alternative for summary judgment, plaintiffs filed a brief and twenty-one certifications, alleging, among other things, that defendants had acted in a hasty and unresponsive manner. For example, regarding The Atlantic Group Report, plaintiffs' brief asserted:
These conclusionary statements are the sum total of the so called "investigation." They are not supported by an evidentiary basis, reports, surveys, or journal studies that support the bald claim that surface parking is per se "obsolete."
Consistent with Lyons, Judge Feinberg properly permitted defendant to submit supplemental materials in direct response to plaintiffs' allegations. The supplemental certifications with attached exhibits demonstrated the years of public discourse that predicated the challenged redevelopment activity. The supplemental certification of Solow, together with the accompanying documents, detailed over ten years of discussions regarding the parking problems in downtown Princeton. As noted by Judge Feinberg, all of the documents attached to the Solow certification were public documents. The certifications of Houstoun and Henry merely set forth their qualifications as redevelopment consultants, again in direct response to plaintiffs' challenges. Under these circumstances, we find no misapplication of discretion by the trial court in declining to strike the supplemental materials.
Moreover, the trial court was not required to conduct a Lyons hearing as a prerequisite to allowing supplementation of the record. The Lyons Court stated that in the context of hearings in prerogative writs actions, "there is no sound reason why the plaintiffs may not produce for testimonial examination any witnesses who testified or made reports or furnished documents on matters relating to the board's finding of blight at the legislative hearing." 48 N.J. at 534, 226 A.2d 625. Unlike the plaintiffs in Lyons, who appeared at the planning board hearing but were precluded from cross-examining witnesses, no member of the public appeared at the public hearing conducted by the Planning Board in this matter.
Lyons should not be read to sanction a complete failure to prepare for the Planning Board hearing in the expectation of obtaining a de novo trial in the Law Division. *709 See Levin, supra, 57 N.J. at 528, 274 A.2d 1. In Levin, the plaintiffs' attorney appeared at a planning board hearing and requested an adjournment for the purposes of retaining experts to present testimony rebutting a consultant's report in favor of a blight designation. Id. at 524-25, 274 A.2d 1. However, when the hearing resumed, plaintiffs did not offer any testimony. Id. at 525-26, 274 A.2d 1. At the prerogative writs hearing, the Law Division, relying on Lyons, allowed plaintiffs' attorney to present witnesses and to cross-examine the defendants' witnesses. Id. at 527, 274 A.2d 1. The Court explained that Lyons was never intended to countenance such a procedure:
It was not this Court's intention in Lyons to authorize persons opposed to a determination of blight to withhold evidence available to them or to make no effort to obtain and to submit evidence in support of their position at the Planning Board hearing. That is the place and time where ordinarily the basic record should be made. In the later prerogative writ proceedings, "additional pertinent evidence" (emphasis added) may be presented by either party in support of the position he espoused below.

* * * *
We caution ... that Lyons should not be read to sanction a willful withholding of facts at or a willful failure to prepare for the Planning Board hearing in the expectation of obtaining a full de novo trial in the Law Division.
[Levin, supra, 57 N.J. at 528, 274 A.2d 1 (quoting Lyons, supra, 48 N.J. at 533-34, 226 A.2d 625).]
Accordingly, here, plaintiffs were not entitled to a trial or hearing de novo of the type cautioned against in Levin.

V.
Finally, plaintiffs challenge the validity of the area-in-need-of-redevelopment designation on the additional ground that "no members of the general public attended and participated in the public hearing due to the absence of effective public notice of the hearing which was limited to a legal notice in two local newspapers." They also assert that notice should have been personally served on "any nearby landowners or businesses."
Plaintiffs claim that the notice for the Planning Board's February 21, 2002, public hearing was defective because its description of the "study area" did not reflect the Planning Board's decision to include a portion of Spring Street in that area. Plaintiffs suggest that because the notice provided by the Planning Board was deficient, the redevelopment designation is void. We disagree.
Judge Feinberg ruled that the notice provided by defendants prior to the public hearing complied with the notice provision of the LRHL, N.J.S.A. 40A:12A-6. More specifically, the judge found that, in compliance with N.J.S.A. 40A:12A-6(b)(2), notices were published in The Princeton Packet on February 1, 2002, and February 7, 2002, announcing that a public hearing would be held on February 21, 2002, to determine whether the study area should be designated as an area in need of redevelopment. In compliance with N.J.S.A. 40A:12A-6(b)(3), both notices described the area under study and further indicated that a map and report had been prepared and were available for inspection at the office of the municipal clerk.
The judge rejected plaintiffs' contention that the notice was insufficient to advise the public of the purpose of the hearing. According to Judge Feinberg, plaintiffs "essentially" contended "that the Planning Board had a duty to publish all potential *710 consequences or ramifications of the hearing in the public notice" and thereby sought "to impose more stringent notice requirements than those mandated by the LRHL." In this regard, she found that the "case law cited by plaintiffs has no application to this matter, and in no way supports a finding that the Planning Board lacked jurisdiction to make" the redevelopment designation, since it "scrupulously adhered to the controlling notice requirements of the LRHL."
In addition, the judge found that "the alleged failure to include Spring Street in the study area description in no way renders defective the public notice of the hearing." The judge noted that N.J.S.A. 40A:12A-6(b)(3) only requires that such notice "set forth the general boundaries of the area to be investigated." The Planning Board complied with the statutory notice requirements, by providing "a detailed description of the study area boundaries, both by street name and lot and block number." The addition of Spring Street to the study area did not change those boundaries, as it was already encompassed within the blocks and lots set forth in the notices. Therefore, no additional notice was required. The judge further noted that since Spring Street is a public street that "does not incorporate any of the commercial or residential establishments located on that street ... there was no need to provide notice to any property owners as the land was already owned by the municipality." The judge concluded that, given the adequacy of the notices provided, plaintiffs' claimed lack of awareness "that the study area was under consideration for designation as a redevelopment area was not due to faulty notice by the Borough, but rather to [plaintiffs'] ... lack of diligence."
Contrary to plaintiffs' contentions, the record on appeal demonstrates that the Planning Board properly complied with the notice requirements set forth in the LRHL. N.J.S.A. 40A:12A-6(a) provides that a redevelopment designation "shall be made after public notice and public hearing as provided in subsection b. of this section." In turn, subsection (b) of N.J.S.A. 40A:12A-6 provides in pertinent part:
(2) The planning board shall specify a date for and give notice of a hearing for the purpose of hearing persons who are interested in or would be affected by a determination that the delineated area is a redevelopment area.
(3) The hearing notice shall set forth the general boundaries of the area to be investigated and state that a map has been prepared and can be inspected at the office of the municipal clerk. A copy of the notice shall be published in a newspaper of general circulation in the municipality once each week for two consecutive weeks, and the last publication shall be not less than ten days prior to the date set for the hearing. A copy of the notice shall be mailed ... to the last owner, if any, of each parcel of property within the area according to the assessment records of the municipality. A notice shall also be sent to all ... claimants of an interest in any such parcel.
In compliance with the foregoing, the Planning Board twice published notice of the February 21, 2002, public hearing in The Princeton Packeton February 1, 2002, and February 8, 2002. The published notice described the proposed redevelopment area and the date, time, and location of the hearing. The notice stated that the purpose of the hearing was to determine whether the "study area," which is comprised of certain "municipally owned properties in the Borough of Princeton ... is an area in need of redevelopment according to the criteria set forth in section *711 5...." The notice set forth a detailed description, both by address and lot and block number, of the proposed study area. The notice also explicitly stated that "[a] map of the study area" and a "report ... prepared by The Atlantic Group" were "on file with the Municipal Clerk of the Borough of Princeton," and available for "public inspection" at the address and times provided. Since all of the property within the redevelopment area was municipally owned, defendants were not required to serve this notice upon "nearby landowners or businesses" as asserted by plaintiffs.
Therefore, we conclude that the trial court properly rejected plaintiffs' challenge to the redevelopment designation on the basis of insufficient public notice.
Affirmed.
HOENS, J.A.D., concurring.
I concur with the decision and result reached by the majority in their opinion on the merits of plaintiffs' appeal. I join in their conclusions, therefore, that the Borough Council properly applied the criteria set forth in the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 et seq., in designating the subject, municipally-owned property as an area in need of redevelopment pursuant to the LRHL, see N.J.S.A. 40A:12A-5, and that there was substantial, credible evidence supporting that decision.
I write separately and in concurrence, however, because I would have reached the ultimate result of rejecting all of plaintiffs' claims on appeal without considering, as did the majority, the merits of plaintiffs' arguments. Rather, I would have concluded that the trial judge erred in issuing the February 25, 2003 order enlarging the time period within which plaintiffs were permitted to file their action in lieu of prerogative writs and I would have remanded the matter for entry of an order dismissing plaintiffs' complaint as untimely.
I would have done so because, in my view, the facts and circumstances presented to the trial court in support of the motion to enlarge time fell short of those contemplated either by the applicable rule of court, R. 4:69-6(c), or by the LRHL. See N.J.S.A. 40A:12A-6. More to the point, I would have done so because the record illustrates the very reasons why applications to expand those time limitations should only be sparingly granted. As a factual matter, after carefully following all of the procedural and substantive requirements contained in the LRHL, the Borough Council passed a resolution on February 26, 2002, designating the subject property as an area in need of redevelopment. That resolution was the end product of some twenty years of public discussion and debate and it followed numerous opportunities for any interested party to voice a concern, each one appropriately publicly noticed. In fact, the record reflects that Princeton Future, Inc., described as an entity created by interested citizens, did participate in the process, submitting its alternate proposal for development in April 2001.
In particular, there were public hearings following appropriate published notices, see N.J.S.A. 40A:12A-6(b)(1), respecting the subject of whether the area in question should be designated as an area in need of development in February 2002. Neither plaintiffs nor any other member of the public appeared and no-one raised any concern at that time. The resolution so designating the area, therefore, was passed. It was not until nearly a year later that plaintiffs filed their action in lieu of prerogative writs seeking a judgment declaring that declaration to be void. Clearly, that filing was substantially outside the forty-five day time limitation contained *712 in Rule 4:69-6(a) and in the LRHL itself. See N.J.S.A. 40A:12A-6(b)(7).
Regardless of whether one applies the recognized exceptions to the usual 45-day filing limit for prerogative writs, see R. 4:69-6(c), or looks more particularly to the applicable statutory grounds, see N.J.S.A. 40A:12A-6(b), plaintiffs' plea for relief from the time limitation in my view was insufficient.
The time-enlargement provision contained in the court rule requires a showing that it is "manifest that the interest of justice so requires." R. 4:69-6(c). That standard recognizes that the forty-five day rule is designed to provide a measure of repose to the municipality and is aimed at those who slumber on their rights. Reilly v. Brice, 109 N.J. 555, 558-60, 538 A.2d 362 (1988); Schack v. Trimble, 28 N.J. 40, 49, 145 A.2d 1 (1958); Tri-State v. City of Perth Amboy, 349 N.J.Super. 418, 423, 793 A.2d 834 (App.Div.), certif. denied, 174 N.J. 189, 803 A.2d 1161 (2002); Adams v. DelMonte, 309 N.J.Super. 572, 578-79, 707 A.2d 1061 (App.Div.1998); Washington Township Zoning Bd. of Adjustment v. Washington Township Planning Bd., 217 N.J.Super. 215, 225, 525 A.2d 331 (App. Div.), certif. denied, 108 N.J. 218, 528 A.2d 36 (1987). Our Supreme Court has cautioned, in a related context, that extensions of time for filing actions in lieu of prerogative writs should be granted in limited circumstances. Robbins v. City of Jersey City, 23 N.J. 229, 238-39, 128 A.2d 673 (1957)(extensions of time "should be but exceptionally condoned, and only in the most persuasive circumstances").
Among the categories of cases warranting application of the time-enlargement provision included within Rule 4:69-6(c), as the majority concedes, are those cases involving: (1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; (3) important public rather than private interests that require adjudication or clarification; and (4) a continuing violation of public rights. See Borough of Princeton v. Board of Chosen Freeholders of Mercer County, 169 N.J. 135, 152, 777 A.2d 19 (2001); cf. Bryant v. City of Atlantic City, 309 N.J.Super. 596, 614, 707 A.2d 1072 (App.Div.1998).
Here, the only arguably applicable category arises from the assertion that this matter involves an important public interest that needs adjudication or clarification. In granting an enlargement of the forty-five day time limitation on this ground, the trial court relied upon the fact that 843 voters had signed petitions and on the argument that plaintiffs were alleging numerous violations of the provisions of the LRHL. In my view, however, those facts failed to establish an important public interest that required adjudication.
First, the signatures on the petitions were in support of an effort to force a referendum on the Bond Ordinance and were not, strictly speaking, an attack on the redevelopment designation itself. While the record is somewhat ambiguous, it appears that it was only after plaintiffs concluded that approach would fail, see N.J.S.A. 40A:12A-28, that they proceeded by way of their complaint in lieu of prerogative writs. The petitions respecting the Bond Ordinance, however, did not necessarily equate with an attack on the original redevelopment area designation. Second, I would not equate mere numerosity with "important public rather than private interests that require adjudication." The record, I think, amply demonstrates that, in the final analysis, plaintiffs' complaints were more personal than public. Third, there was no meaningful reason proffered by plaintiffs for the delay in filing their complaint, particularly in light of the full and adequate public notice given for the *713 hearings on the issue about whether the subject property should be designated as an area in need of redevelopment.
It is, as well, in this context that the separate forty-five day window included in the LRHL itself becomes critical to the analysis. The purpose for including a separate time frame is obvious. Designation of an area as being in need of redevelopment is but the first step in a process leading to the ultimate accomplishment of redeveloping that area. Following that designation, the further steps needed to achieve the goal of redevelopment include developing, approving and implementing the redevelopment plan, selecting and entering into agreements with contractors and approving agreements with redevelopers. See N.J.S.A. 40A:12A-7 (redevelopment plan); N.J.S.A. 40A:12A-8 (defining power of municipality to carry out redevelopment plan); Bryant v. City of Atlantic City, supra, 309 N.J.Super. at 603, 707 A.2d 1072.
Viewed against this statutory framework, the purpose of the time limitation is apparent. Each step in the process depends upon the legitimacy of the original designation of the area as being one that is in need of redevelopment. Just as the underlying purpose of the limitation set forth in the court rule is to "give an essential measure of repose to actions taken against public bodies," Washington Township Zoning Bd. of Adjustment v. Washington Township Planning Bd., supra, 217 N.J.Super. at 225, 525 A.2d 331, even more so is repose to be honored in the redevelopment context. This record demonstrates that repose is particularly important in light of the significant municipal actions that followed the February 26, 2002, now-challenged "area in need of redevelopment" designation, all of which are outlined in the majority's opinion. In my view, the trial court here failed to give due consideration to the very significant potential impact upon the municipality caused by the extension. See Southport Dev. Group v. Township of Wall, 310 N.J.Super. 548, 556, 709 A.2d 226 (App.Div.), certif. denied, 156 N.J. 384, 718 A.2d 1213 (1998).
This record starkly presents the very circumstances that underpin the purpose of the forty-five day time limitation. The Planning Board and Borough Council meticulously followed the procedural and substantive requirements outlined in the LRHL. Hearing no hint of dissent, they proceeded, as they were entitled to, by taking actions in reliance thereon that involved the expenditure of significant public funds and entering into contracts for the completion of the approved redevelopment project. By the time plaintiffs came forward, the library, which would have moved elsewhere save for the assurance that adequate adjacent parking would be part of the redevelopment plan, was under construction, the redevelopment plans had been drawn and approved, a developer had been selected, preconstruction activities were well underway and the bonds were about to be issued. In light of that clear record of the municipal body's compliance with the statute, the municipality should not have been subjected to this tardy challenge of plaintiffs.
NOTES
[1] We note that N.J.S.A. 40A:12A-5 has since been amended by L. 2003, c. 125, § 3, eff. July 9, 2003, to add the following subsection: "h. The designation of the delineated area is consistent with smart growth planning principles adopted pursuant to law or regulation."
[2] The Blighted Area Act was repealed by L. 1992, c. 79, § 59, and replaced by the LRHL.