**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4356-15T3

CIVIC JC, INC.,

    Plaintiff-Appellant,

v.

THE CITY OF JERSEY CITY;
THE MUNICIPAL COUNCIL OF THE
CITY OF JERSEY CITY; and THE
PLANNING BOARD OF THE CITY OF
JERSEY CITY,

    Defendants-Respondents.

_____

Argued October 4, 2017 — Decided November 1, 2017

Before Judges Koblitz and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3633-15.

Cynthia A. Hadjiyannis argued the cause for appellant.

Christopher K. Harriott argued the cause for respondent Planning Board of the City of Jersey City (Florio Kenny Raval, LLP, attorneys; Dennis P. Liloia, on the brief).

Chaunelle Robinson, Assistant Corporation Counsel, argued the cause for respondents City of Jersey City and Municipal Council of the City of Jersey City (Jeremy Farrell,

Corporation Counsel, attorney; Ms. Robinson, on the brief).

PER CURIAM

Civic JC, Inc. appeals from the April 28, 2016 order dismissing its complaint in lieu of prerogative writs seeking the invalidation of the designation of the City Hall Study Area as a "non-condemnation area in need of redevelopment," by Jersey City, its Council and Planning Board under N.J.S.A. 40A:12A-5 of the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73. We affirm.

Mary Ann Bucci-Carter, the Senior Planner of the Jersey City Planning Division, conducted an investigation and presented a report of her findings supporting the designation during a public hearing held by the Planning Board. Civic JC did not attend the hearing. The Planning Board unanimously recommended that the Municipal Council designate the City Hall Study Area as a non-condemnation area in need of redevelopment. The trial court, under its deferential standard of review, held that the City defendants' designation was not arbitrary, capricious or unreasonable because the Municipal Council had sufficient evidence based on Bucci-Carter's report and testimony to find that the City Hall Study Area met the statutory criteria.

The City Hall Study Area consists of 2.2 acres in downtown Jersey City's Van Vorst Historic District. It includes City Hall,

its adjacent parking lot, a parking lot across Montgomery Street from City Hall and a privately-owned three-story multifamily residential unit that fronts on York Street. The back of the York Street building is contiguous to the Montgomery Street parking lot.

A municipal governing body may conclude by resolution that a delineated area is in need of redevelopment if any of the following conditions is found:

> (a) The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions;
>
> . . . .
>
> (d) Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community;
>
> . . . .
>
> (h) The designation of the delineated area is consistent with smart growth planning principles adopted pursuant to law or regulation.
>
> [N.J.S.A. 40A:12A-5.]

Bucci-Carter conducted an investigation of each of the parcels in the City Hall Study Area and produced the "Report Concerning the Determination of the City Hall Study Area as a Non-Condemnation Area in Need of Redevelopment" (Report). She conducted a physical survey of the property "to determine the general physical condition for the parcel within the Study Area." The Report described the standards for evaluating the physical conditions of each building as good, fair, poor, or dilapidated.

The Report defined "poor" physical condition as having several major maintenance problems or code violations, including those affecting electrical, plumbing, heating, ventilating or air conditioning systems. Significant conditions were those deemed to be unsafe, unsanitary, obsolete or to be so lacking in light, air or space as to be conducive to unwholesome human occupation.

The Report defined "dilapidated" physical condition as "in advanced stages of deterioration." The Report found that all parcels and structures were in "poor" condition.

The Report described the 1896 City Hall structure as "in need of major system replacements and upgrades," a condition that "has been exacerbated due to several natural disasters," including a 1979 fire and a flood caused by Hurricane Sandy in 2012. The Report states that the building "has begun to show signs of visible deterioration," with "damaged or missing roof-top and fascia

elements."  It "sustained hundreds of thousands of dollars of flood damage to the basement, elevator mechanism and utilities," such that "portions of the basement [are] no longer fit for active use."  Additionally, "[l]ower level windows remain boarded," and "[a] portion of the Montgomery Street foundation near the entry stair has begun to buckle causing significant cracks in the façade above."  The Report also found cracks were "readily apparent in the bluestone stairs at the front entrance" and the "blue stone has begun to spall[1] and crumble with mortar cracking and flaking away requiring reconstruction and not mere re-pointing."  The Report describes the interior of the building as "lack[ing] a sprinkler system, a modern handicapped accessible entrance (although a compliant access was recently reconstructed on Montgomery Street), up-dated electrical and lighting services, in addition to [having] general cosmetic damage, examples of which include peeling paint and broken floor tiles."

The Report concludes its analysis of the City Hall building by stating that the building needs "extreme renovations" and is:

> representative of substandard conditions and clearly possesses obsolete features and design that have not been upgraded over the years to eliminate functional obsolescence. Some areas of the building are lacking in light, air and

---

[1] Spall is generally defined in the dictionary as to break (ore, rock, or stone) into fragments. Spall, OxfordDictionaries.com, https://en.oxforddictionaries.com/definition/spall (last visited Oct. 16, 2017).

A-4356-15T3

efficient space qualifying as unwholesome. The building can be classified as meeting criteria "a" and "d" as an area in need of redevelopment.

City Hall's adjacent parking lot "contains multiple layers of uneven and uncurbed asphalt." It has a "substandard, dangerous, and obsolete parking design . . . with two parallel dead-end aisles entering Marin Boulevard only 20' from the intersection and 40' apart creat[ing] a hazardous traffic pattern within the ROW.[2]" The lot "lacks proper drainage, grading, curbing, landscaping, and other elements common and necessary for the proper and safe function of a parking area." The Report classified the adjacent City Hall parking lot as meeting criterion (d) as an area in need of redevelopment pursuant to N.J.S.A. 40A:12A-5.

The Montgomery Street parking lot has faded striping, and lacks adequate "[c]urbing, curb stops, adequate lighting and buffering landscaping." The lot contains damaged fencing and "in some areas, only the frame of the fence remains, yielding a rundown and poorly maintained look." The lot "lacks proper drainage, grading, and other typical modern improvements intrinsic to a well developed and well designed parking facility." The Report concludes that the lot "constitutes a deleterious land use detrimental to the safety and welfare of the community" and meets

---

[2] Based on the context, we assume ROW refers to "right of way."

criteria (d) and (h) as an area in need of redevelopment under N.J.S.A. 40A:12A-5.

The last parcel surveyed by the Report is the three-story, five-unit multifamily residential building located on York Street. The building "has a rear yard, strewn with trash and surrounded by a chain-link fence that is falling down." It is "of substandard design with small inefficient units." The building contains "[l]oose and hanging wires, and wired [sic] entering and exiting the center, side and front walls." The rear of the building "requires some repairs to insure [the metal fire escape] is closed and secure." Both the front and back of the building "contain an undersized person door non-compliant to current building code or safety design standards."

The Report concludes that the York Street building "possesses characteristics of lacking light, air, and space, in a manner conducive to unwholesome living conditions." The Report determines that the parcel meets criterion (a) as an area in need of redevelopment under N.J.S.A. 40A:12A-5.

The last section of the Report entitled "Conclusion and Recommendation" summarizes the findings and classifies the City Hall Study Area as a non-condemnation area in need of redevelopment under criteria (a), (d), and (h) of N.J.S.A. 40A:12A-5. The Report characterizes the buildings as having "conditions of obsolescence

and unsafe conditions" and the parking lots as posing "a dramatically unsafe condition to the welfare and safety of hundreds of pedestrians that utilize these sidewalks each day" and a danger to "the public heath [sic] and safety of parking lot users and others who commute to or visit the City Hall building or neighborhood." The Report notes that the City Hall Study Area is also within the "Smart Growth Areas" map, and therefore qualifies under criterion (h) of N.J.S.A. 40A:12A-5.

Civic JC argues that the Planning Board and Council improperly designated the property as obsolete under criterion (a) because to be "obsolete" means to be "no longer in use" and the City Hall building, the two parking lots and the residential building are still in use. Civic JC also argues that the Report did not address the second part of criterion (a) regarding "characteristics conducive to unwholesome working conditions," and, under criterion (d), the Report fails to provide enough evidence that the City Hall building is "detrimental to the safety, health, welfare or morals of the community."

Civic JC does not deny that Bucci-Carter is an experienced city planner and that the conditions in the Report do in fact exist. No expert witness or other opposition to the non-condemnation in need of redevelopment, or blighted, designation was presented during the Planning Board hearing.

The trial court reviewed the Report and the statute and concluded that the evidence was not "so light or lacking in detail that the action of the board was arbitrary, capricious, or unreasonable." We review a trial court's decision using the same standards as the trial court: giving deference to the actions and factual findings of local boards, not disturbing such findings unless they are arbitrary, capricious, or unreasonable. Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015).

"The New Jersey Constitution grants municipalities the authority to revitalize decaying and disintegrating residential, commercial, and industrial areas." 62-64 Main Street, LLC v. Mayor and Council of City of Hackensack, 221 N.J. 129, 134 (2015). The goal of Article VIII, Section 3, Paragraph 1, the Blighted Areas Clause, is "to give municipalities the means to improve the quality of life of their residents and to spur business opportunity and job growth." Ibid. The Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73, defines when an area is blighted and therefore "in need of redevelopment." N.J.S.A. 40A:12A-5.

A municipal governing body has the authority to determine by resolution whether areas that are within its jurisdiction are areas in need of redevelopment, but must first, by resolution, "authorize the planning board to undertake a preliminary

investigation to determine whether the proposed area is a redevelopment area." N.J.S.A. 40A:12A-6(a). The planning board will make the determination after public notice and a public hearing, and then recommend to the municipal governing body whether it should designate the area in need of redevelopment. N.J.S.A. 40A:12A-6(b). After receiving the recommendation, the municipal governing body may adopt a resolution determining that the area is in need of redevelopment. N.J.S.A. 40A:12A-6(b)(5)(b).

Planning boards and governing bodies "have an obligation to rigorously comply with the statutory criteria for determining whether an area is in need of redevelopment." 62-64 Main Street, supra, 221 N.J. at 156. In an action in lieu of prerogative writs challenging a blight determination, the trial court must decide whether the determination is "supported by substantial evidence." N.J.S.A. 40A:12A-6(b)(5)(c).

"[A]fter the municipal authorities have rendered a decision that an area is in need of redevelopment, that decision is 'invested with a presumption of validity.'" 62-64 Main Street, supra, 221 N.J. at 157 (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)). The LRHL provides that an "'area in need of redevelopment' designation 'if supported by substantial evidence . . . shall be binding and conclusive upon all persons affected by the determination.'" Concerned Citizens of Princeton,

Inc. v. Mayor and Council of Borough of Princeton, 370 N.J. Super. 429, 452-53 (App. Div. 2004) (quoting N.J.S.A. 40A:12A-6(b)(5)).

Criteria (a) and (d) list both "obsolescence" and "dilapidation" as conditions that may individually lead to a finding that an area is in need of redevelopment, as long as the condition is either "conducive to unwholesome living or working conditions," N.J.S.A. 40A:12A-5(a)[3], or "detrimental to the safety, health, morals, or welfare of the community." N.J.S.A. 40A:12A-5(d). Obsolescence is defined in the dictionary as "the process of becoming obsolete or the condition of being nearly obsolete." Obsolescence, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/obsolescence (last visited Oct. 16, 2017). Obsolete is defined as "no longer in use or no longer useful." Obsolete, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/obsolete (last visited Oct. 16, 2017). Obsolescence does not require that the building be no longer in use. Therefore, Civic JC's argument that no building currently in use can logically be obsolescent is inaccurate. The Report describes numerous specific conditions of the City Hall building and states that it "clearly possesses

---

[3] A fair reading of this subsection also supports the conclusion that a finding of "obsolescence" or "dilapidation" alone is sufficient, even if not "conducive to unwholesome living or working conditions." We need not resolve this ambiguity in this opinion.

obsolete features and design," and that areas of the building lack "light, air, and efficient space qualifying as unwholesome." The Report concludes that the City Hall building meets both criteria (a) and (d).

When reviewing whether a municipality properly exercised its authority in designating an area in need of redevelopment, courts should not parse structures within a property. See 62-64 Main Street, supra, 221 N.J. at 160 (determining that the Court could not look separately at the subject property's parking lot, as the lot was an integral part of the property). The Report found that the two parking lots included in the City Hall Study Area have features that are unsafe, substandard, and obsolete, and have potentially harmful conditions "conducive to unwholesome conditions for users" of the parking lot. The Report determined that the parking lots qualify under statutory criterion (d).

Bucci-Carter relied on information provided by the building's owner, after determining that an interior survey was not mandated, when evaluating the York Street building. After detailing the building's observed exterior conditions, the Report concluded that the site met the statutory criteria under (a) as an area in need of redevelopment. The Planning Board made its recommendation to the Municipal Council based on findings of both obsolescence and dilapidation for the City Hall Study Area as a whole.

A-4356-15T3

The Report coupled with Bucci-Carter's unrebutted testimony provided substantial evidence of the City Hall Study Area's classification as a non-condemnation area in need of redevelopment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION